## Clark's Estate.

*Constitutional law—Special legislation—Compensation to surety companies—Act of June 24, 1895, P. L. 248.*

The act of June 24, 1895, which authorizes persons who act in a trust capacity and are required by law to give bonds, to include as part of the expenses of the administration of the trust, the compensation paid to a surety company for going upon their bond does not contravene section 7, article 3, of the constitution, which prohibits the legislature from passing any local or special law " granting to any corporation . . . . any special or exclusive privilege or immunity."

All corporate franchises are special and exclusive privileges or immunities, discriminative against individuals. The act of incorporation itself is a discrimination as to privileges, powers and liabilities against the natural person. The constitution does not prohibit these special privileges of corporations as compared with individuals.

The qualities and advantages of the security afforded by surety companies are materially different from those afforded by individuals ; and it is on this difference that the discrimination in the act of 1895 is founded, and it is a fair and constitutional basis for the legislative discretion.

*Constitutional law—Surety companies—Act of June 24, 1895.*

The act of June 24, 1895, does not create a special lien in favor of surety companies. It does not give a lien, or even a claim of any kind to the surety company against the estate.

*Constitutional law—Fourteenth amendment of the constitution of the United States—Act of June 24, 1895.*

The act of June 24, 1895, does not contravene the fourteenth amendment of the constitution of the United States.

*Constitutions—Construction—Real purpose.*

Constitutions are not to receive a narrow or technical or too literal construction. They get their authority from the adoption of the people, and they are to be read in a broad and as far as possible untechnical way to carry out their real purpose.

Argued Jan. 19, 1900. Appeal, No. 350, Jan. T., 1899, by William J. McAuliffe, guardian of John Joseph Clark, from decree of Superior Court, Oct. T., 1898, No. 8, affirming a decree of the Orphans' Court of Phila. Co., Jan. Term, 1895, No. 154, in the estate of John Joseph Clark, a minor. Before GREEN C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Appeal from Superior Court. See 10 Pa. Superior Ct. 423.

From the record it appeared that the guardian claimed credit for the sum of $12.00 paid to the City Trust Safe Deposit & Surety Company for becoming his surety upon the bond which he was required by law to give as guardian. The orphans' court disallowed the claim, and the decree of the orphans' court was sustained by the Superior Court.

*Error assigned* was the decree of the court.

*Lincoln L. Eyre* and *John G. Johnson*, with them *Joseph Edward Murray*, for appellant.—The act of 1895 confers no special privilege or immunity prohibited by the state constitution.

The presumption is always in favor of constitutionality: Craig v. First Presbyterian Church, 88 Pa. 42 ; State v. Boone County, 50 Mo. 317 ; Wheeler v. Philadelphia, 77 Pa. 338 ; Kilgore v. Magee, 85 Pa. 401.

It has never been pretended that the legislature has not the right to classify in proper cases, and when such classification is within the legislative power it matters not how arbitrary the legislative enactment may appear to those who may feel dissatisfied with or injured by it: Guarantee Co. of N. A. v. Mechanics' Savings Bank & Trust Co., 80 Fed. Repr. 766 ; Com. v. Vrooman, 164 Pa. 306.

The American legislatures possess the absolute legislative powers of the British Parliament. They are fully sovereign

and omnipotent, subject only to such constitutional prohibitions as are clearly and unqualifiedly expressed: Cooley's Constitutional Limitations, 86.

The remedy for an unfair act of assembly, if the majority so think, is in an appeal to the legislature or at the ballot box for its repeal: Ervine's App., 16 Pa. 256; Munn v. Illinois, 94 U. S. 113.

The courts cannot impute to the legislature any other but public motives for their acts: Sunbury, etc., R. R. Co. v. Cooper, 33 Pa. 278.

The act of 1895 is not in violation of the federal constitution: Missouri Pacific Ry. Co. v. Humes, 115 U. S. 512; Minneapolis, etc., Ry. Co. v. Beckwith, 129 U. S. 26; Giozza v. Tiernan, 148 U. S. 657; Pittsburg, etc., Ry. Co. v. Backus, 154 U. S. 421; Pacific Express Co. v. Seibert, 142 U. S. 339; Norfolk & Western R. R. Co. v. Penna., 136 U. S. 114; Specht v. Com., 8 Pa. 312; Waldo v. Com., 9 W. N. C. 200; Respublica v. Duquet, 2 Yeates, 493; Byers v. Com., 42 Pa. 89; Wright v. Com., 77 Pa. 470; Com. v. Schoenhutt, 3 Phila. 20; Com. v. Wilson, 9 W. N. C. 291; Hamacher v. Commercial Bank, 95 Wis. 359; Holmes v. Tenn. Coal, Iron & R. R. Co., 22 So. Repr. 403; Powell v. Com., 114 Pa. 265.

*George Henderson* and *Thomas James Meagher* for appellee.—This act is a forbidden special act under the constitution of this commonwealth: Wheeler v. Phila., 77 Pa. 338; Kilgore v. Magee, 85 Pa. 401; In re N. Y. Elevated R. R. Co., 70 N. Y. 327; State v. Tolle, 71 Mo. 645; Topeka v. Gillett, 32 Kan. 431; Consumers' Gas Trust Co. v. Harless, 131 Ind. 446; Com. v. Macferron, 152 Pa. 244; Lehigh Valley Coal Co.'s App., 164 Pa. 44; Scowden's App., 96 Pa. 422; Davis v. Clark, 106 Pa. 377; Ayars's App., 122 Pa. 266; In re Wyoming Street, 137 Pa. 494; Seabolt v. Commissioners of Northumberland Co., 187 Pa. 318; Com. v. Patton, 88 Pa. 258; McCarthy v. Com., 110 Pa. 243; Morrison v. Bachert, 112 Pa. 322; Scranton v. Silkman, 113 Pa. 191; Philadelphia v. Haddington M. E. Church, 115 Pa. 291; Weiman v. Wilkinsburg, etc., Ry. Co., 118 Pa. 192; Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231; Perkins v. Philadelphia, 156 Pa. 539; Van Riper v. Parsons, 40 N. J. L. 1; Anderson v. Trenton, 42 N. J. L. 486; State v.

New Brunswick, 42 N. J. L. 51; Com. v. Hammer, 42 N. J. L. 435; Hammer v. Richards, 44 N. J. L. 667; Bronson v. Oberlin, 41 Ohio, 476; State v. Wood, 49 N. J. L. 85; State v. Donovan, 20 Nev. 75; Atlantic City Water Works Co. v. Consumers' Water Co., 44 N. J. Eq. 427; Lodi Township v. State, 51 N. J. L. 402; Edmonds v. Herbrandson, 2 N. D. 270; Vermont Loan & Trust Co. v. Whithed, 2 N. D. 82; State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 400.

The determination of the character of an act as general or restricted (i. e. local or special) is for the judiciary: State v. Riordan, 24 Wis. 48; State v. Boone County, 50 Mo. 317; State v. Newark, 40 N. J. L. 72; In re Ruan Street, 132 Pa. 257; Perkins v. Philadelphia, 156 Pa. 534.

It is well settled that the fiduciaries specified in the act are entitled to a lien on their fiducial estates for disbursements properly made by them in the administration thereof. There is palpably no difference in this respect among those mentioned in the statute; a trustee is on the same footing as a committee, a receiver as an executor, and so on. This doctrine is recognized in the following authorities: Beckwith v. Carroll, 56 Ala. 12; Heise v. Starr, 44 Ill. 406; Penna. Co. v. Jacksonville, etc., Ry. Co., 66 Fed. Repr. 421; Woodward's App., 38 Pa. 322; Johnson v. Fletcher, 32 Ill. App. 589; Cecil v. Korbman, 1 Binn. 134; Murray v. De Rottenham, 6 Johns. Ch. 52; Deitzler v. Mishler, 37 Pa. 82; King v. Cushman, 41 Ill. 31; Hill on Trustees, 567; Lewin on Trusts, *639; Cobaugh's App., 24 Pa. 143; Demmy's App., 43 Pa. 155.

The act violates that clause of the first section of the fourteenth amendment to the federal constitution, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws:" Santa Clara County v. Southern Pacific R. R. Co., 18 Fed. Repr. 385; Barbier v. Connolly, 113 U. S. 27; Minneapolis, etc., Ry. Co. v. Beckwith, 129 U. S. 26; Missouri v. Lewis, 101 U. S. 22; Hing v. Crowley, 113 U. S. 703; Tinsley v. Anderson, 171 U. S. 101; Magoun v. Illinois Trust and Savings Bank, 170 U. S. 283; Gulf, etc., Ry. Co. v. Ellis, 165 U. S. 153; Duncan v. Missouri, 152 U. S. 377; Fraser v. McConway & Lorley Co., 6 Pa. Dist. Repr. 555; Juniata Limestone Co. v. Fagley, 187 Pa. 193.

OPINION BY MR. JUSTICE MITCHELL, April 30, 1900:

The single question in this case is the constitutionality of the Act of June 24, 1895, P. L. 248, authorizing a receiver, assignee, guardian, committee, trustee, executor, or administrator, required by law or by order of court to give bond as such, to include as part of his lawful expenses in executing the trust such reasonable sum as he may have paid to a company authorized by the law of this state to do so, for becoming his surety, as may be allowed by the court in which he is required to account.

It is objected principally that this act contravenes the clause of section 7, article 3 of the constitution which prohibits the legistature from passing any local or special law " granting to any corporation . . . . any special or exclusive privilege or immunity." But the objection wholly fails to observe the fundamental distinction between corporations and natural persons. All corporate franchises are special and exclusive privileges or immunities, discriminative against individuals. The act of incorporation itself is a discrimination as to privileges, powers and liabilities against the natural person. Under the general corporation Act of April 29, 1874, P. L. 73, constructed with great care for the express purpose of carrying out the provisions of the constitution any five persons, only three of whom need be citizens of this commonwealth, may procure themselves to be a corporation for any one of thirty-seven different classes of purposes of business, charity or entertainment, and thereby acquire privileges and immunities which they did not have before as natural persons, and which no individuals singly or collectively can obtain except through the same process. And if the corporators are as many as nine in number they may under the same or other acts as canal, railroad, plank road, turnpike or other companies assume for themselves still greater privileges even to that of the state's power to take private property against the owner's will, for a nominal public use, which everybody knows is in substance nothing but a purely commercial venture for the benefit of the private persons engaging in it.

The constitution does not prohibit these special privileges of corporations as compared with individuals. On the contrary it intends throughout to provide that they shall be put freely within common reach by means of general laws. The evils of

special legislation were so apparent that, whether with wise forethought or not is perhaps not yet clear, the constitution threw down the bars and opened the gates to the free entry of those gigantic combinations of capital with corporate privileges, which are beginning to assume not only supreme business but important political aspects. The special legislation at which the constitutional prohibition was aimed was wholly different from this. In Price's Index to Local Legislation in Pennsylvania, there are 1032 pages, containing references to more than 45,000 local acts (not including special acts not local in character) more than 10,000 of which are acts relating to special corporations by name. In Ayars's Appeal, 122 Pa. 266, it was said by STERRETT, J., that "during the session of the legislature immediately preceding the adoption of the present constitution nearly 150 local or special laws were enacted for the city of Philadelphia, more than one third that number for the city of Pittsburg and for other municipal divisions of the state about the same proportion. This was by no means exceptional." An examination with some care though by no means exhaustive of the pamphlet laws of 1873 shows a list of over 400 acts granting, amending, extending and enlarging charters and conferring upon particular corporations by name, certain special franchises and privileges not enjoyed by others under the general law. Among the latter are seven acts specially exempting corporations named from taxation (mostly it may be said, upon parsonage and church lots): one exempting a dramatic association from license tax, and one releasing the collateral inheritance tax upon a bequest to a learned society; one releasing building restrictions on land contained in a patent from the commonwealth; four authorizing the sale of burial grounds and other lands held upon trusts; one confirming purchases and sales of land by saving fund and building associations in a single county, and another legalizing an over issue of stock by two building associations named; one to enable a foreign corporation named to hold land in Pennsylvania; one to authorize an agricultural society to allow public and private sales of merchandise on its grounds; one to enable a bridge company to construct a turnpike road and another to permit an iron company to build a telegraph line for its own use; two making penal offenses of trespassing on railroad cars in certain counties,

and of loitering about the depots, etc., of railroads in a particular borough, one authorizing a railroad named to occupy a particular street in the city of Philadelphia; and another permitting a particular street railway company in the same city to salt its tracks to aid in keeping them clear of snow. These were the product of a single session and are a fair sample of one class of the special laws at which the constitutional prohibition was directed. Many of these acts, perhaps a large majority of them were just and proper, and the privileges conferred could now be obtained under the general laws. But the system was inherently liable to favoritism and was open to the popular suspicion that it was practically governed by influences not beneficial to the public interests. Therefore, the constitution did away with it at one sweep. The methods and forms of favoritism as of other fraud are legion, and no enumeration of them in advance could be complete. Therefore, the constitutional restrictions had to a great extent to be expressed in general terms, and the inadequacy of language to express the purpose with entire precision, as well as the determination of the framers of the instrument to make the prohibition effective at all hazards, led to its embodiment in terms that are liable to cover with the letter cases that are not within the spirit and real intent. Constitutions are not to receive a narrow or technical or too literal construction. They get their authority from the adoption of the people, and they are to be read in a broad, and as far as possible, untechnical way to carry out their real purpose. We have recently had occasion to consider with great care the analogous restriction upon local and special laws in relation to school districts, in Com. ex rel. v. Gilligan, ante, p. 504, and without further enlarging on the subject here, may refer to the remarks and the conclusion there expressed, that in cases of this character where no legislative effort to evade the restrictions appears, the courts will look beyond the mere form of the act and examine its true intent and effect, in the light of the purpose of the constitutional restriction.

Viewed in this light the act of 1895 is not at all within the prohibition. The objection is chiefly based on the assumption that the suretyship of a corporation and of an individual are identical and that the act therefore makes a discrimination between equally qualified sureties for the same service. But

this assumption is not sustained by the facts and overlooks the material distinctions between the qualities of the security afforded. These distinctions are obvious. The individual surety as formerly known was usually a relative or friend who had confidence in the principal, and voluntarily assumed the obligation of answering for the latter's faithful performance of duty. I need not speak of the individual who became surety for pay, for the very name of "professional bail-goer" is a reproach to every branch of the administration of justice which he was allowed to contaminate with his presence. But the voluntary surety, however honest and well qualified at the time of his approval by the court, is liable to the contingencies of business, the changes of value in property, and the inexorable chance of death which brings his estate into the administration of the law under wholly changed circumstances. Of the happening of any of these contingencies the only person in position to keep close watch is the principal, and his interest is adverse to making known any doubt as to the sufficiency of his friend, or to assuming the burden of finding a new surety. These are some of the disadvantages even of an honest surety, and if we add to them the risk of a dishonest one who may dispose of his property on his own scent of danger or on a friendly hint from his principal, we may have a fair idea of the dangers of which our reports present many illustrations. On the other hand the surety company included in the provisions of the act of 1895 must have a capital, the amount, nature of investment, and management of which are known and within constant sight of the court and the parties interested; it is obliged to make reports of its condition to the courts and to the commonwealth, and is at all times subject to the visitorial power of the latter; and finally it has the sharp incentive of prevention of loss by looking closely after the administration of his trust by its principal for whom it has become responsible not from friendly personal confidence, but as a strict business venture. It was said in this case by the learned president of the orphans' court whose experience entitles his opinion to great weight, that "corporation suretyship is another product of modern thought and ingenuity, and may be said to possess many advantages over individual bail or security. . . . Our daily experience has proved that corporate security and the oversight and manage-

ment by expert officers of the trust and security companies are highly advantageous not only to the fiduciary but to all the parties interested, whether creditors, legatees or distributees." But even if this be not so, it is plain that while the duties and liabilities of the surety, whether corporation or individual, are the same and in those respects they stand upon the same plane, yet the qualities and advantages of the security afforded are materially different. It is on this difference that the discrimination in the act of 1895 is founded, and it is a fair and constitutional basis for the legislative discretion. The case is far stronger than Com. v. Vrooman, 164 Pa. 306, for the act there sustained absolutely prohibited certain business previously lawful to individuals, while the act of 1895 debars no one, but merely gives an incidental advantage to what the legislature held to be a better security.

A second objection considered by the learned judge of the orphans' court, but evidently as a mere makeweight, was that the act creates a special lien in favor of the surety company. This cannot be maintained. Apart from the common-law liens of artisans and vendors dependent on possession, liens must rest on clear statutory authority. There is none here. The act does not give a lien, or even a claim of any kind to the surety company against the estate. The trustee is allowed a credit not for what he owes or has agreed to pay but for what he has paid. Payment by the trustee is a necessary prerequisite to any claim against the estate, and even then it does not come in as a new lien but on the footing of an ordinary item of expense in the administration of the trust.

The further objection that the act contravenes the fourteenth amendment of the constitution of the United States is too far fetched to require notice.

Judgment reversed and record remitted with directions to consider and determine the item excepted to, on its merits as a reasonable sum paid under the act of 1895.