# Germantown Trust Co., Appellant, *v.* Powell.

# Union Trust Co., of Pittsburgh, Appellant, *v.* Powell.

*Constitutional law—Escheats—Act of June 7, 1915, P. L. 878—
Impairing obligation of contract—Due process of law—Equal pro-
tection of the law—Title of act—Special legislation—Classification
—Corporation—Statute of limitations.*

1. The Commonwealth by virtue of its sovereign power, may
take charge of property abandoned or unclaimed for a period of
time.

2. The Act of June 7, 1915, P. L. 878, entitled "An Act provid-
ing for the escheat of deposits of money or property of another re-
ceived for storage or safe keeping," etc., does not violate Art. I,
Sec. 17, of the Constitution of Pennsylvania, and Art. I, Section
10, of the Constitution of the United States, by impairing the
obligation of the contract between the owner of the property and
the depositary.

3. The agreement of the bank or depositary is to keep the money
and pay it on demand. When demand is made the contractual
relation ends. A statute of escheat, in effect, simply provides for a
termination of the contract of deposit, at the instance of the Com-
monwealth and by virtue of its sovereign power where there are no
heirs to claim the property after the death of the owner, or after the
expiration of such reasonable time as may be fixed by law to raise
a presumption of death.

4. While the Act of 1915 requires the filing of certain reports,
for the information of the Commonwealth, a considerable time be-
fore an escheat is declared, this provision is reasonable and enables
the Commonwealth to follow up property as to which there is no
apparent claim of ownership.

5. The act does not deprive an owner of his property without due
process of law. While the fact of death is established only pre-
sumptively by failure of the owner or any known heirs to appear,
this is not in itself sufficient to constitute a denial of due process
of law, or the equal protection of the law within the meaning of
the provisions of the State and Federal Constitutions.

6. The title of the Act of 1915, is sufficient to give notice of all
of its provisions, including certain penalties for violation of its

terms. The act is properly designated in its title as an "escheat" act.

7. The provisions of the act for reporting dividends, profits, debts and interest on debts of corporations, companies, banks, trust companies, insurance companies, limited partnerships and partnership associations, are limited to those organized under the laws of the State of Pennsylvania, and consequently do not apply to foreign corporations, doing business in this Commonwealth.

8. The Act of 1915 is not special legislation involving improper classification of corporations.

9. The dissimilarity between building and loan associations and saving fund societies, as compared with banks of deposit and other corporations receiving deposits of money and securities for safe-keeping is sufficient to warrant placing the former in a class by themselves and exempting them from the provisions of the act.

10. Under section 15 of the act, the bar of the statute of limitations and presumption of payment will not affect the duty to make report and liability to escheat according to the provisions of the act. The legislature has power, if deemed necessary, to establish a new period of limitations, or change an existing one without violating any constitutional prohibition, providing, of course, notice of such provision is contained in the title of the statute. While the subject of the statute of limitations is not expressly referred to in the title of the law under consideration, the general subject-matter provides for the escheat of money, property, debts, etc., and this language necessarily includes the fixing of a limitation period and suggests to persons interested in the subject-matter the likelihood of a provision relating to the effect to be given the existing statutes of limitation on debts subject to escheat.

Mr. Justice MOSCHZISKER, Chief Justice BROWN and Mr. Justice KEPHART concurred in the affirmance of the decree on the ground that the statute being an escheat act, the legislature had full power to pass it irrespective of the doctrine of classification; otherwise they would dissent.

Argued Jan. 13, 1919. Appeals, Nos. 6 and 8, Jan. T., 1919, by the plaintiffs, from the decrees of C. P. Dauphin Co., Equity Docket, Nos. 576 and 578, 1916, dismissing bills in equity in cases of Germantown Trust Company v. A. W. Powell, Auditor General, and Union Trust Company of Pittsburgh v. A. W. Powell, Auditor General. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Bills in equity to restrain the auditor general from enforcing the escheat Act of June 7, 1915, P. L. 278.  Before KUNKEL, P. J.

The cases turned on the constitutionality of the act. The court dismissed the bills.  Plaintiffs appealed.

*Errors assigned* were in dismissing the bills.

*Francis B. Bracken,* with him *R. Stuart Smith, Morgan, Lewis & Bockius* and *Prichard, Saul, Bayard & Evans,* for appellants, the Germantown Trust Co.—The Act of 1915 cannot be sustained as an exercise of the power of the Commonwealth to administer estates of persons presumed to be dead, or of the power to conserve property presumed to have been abandoned by absent owners: Cunnius v. Reading School Dist., 206 Pa. 469; Provident Savings Inst. v. Malone, 201 Mass. 23; Com. v. Dollar Savings Bank, 259 Pa. 138.

The Act of 1915 is not a proceeding to administer the estates of persons presumed to be dead, nor a proceeding to conserve property presumed to have been abandoned by absent owners.

Its purpose is to appropriate certain classes of property to the use of the State.

It does not conserve property for the benefit of an absent owner, nor administer property for the benefit of the heirs of a deceased owner, nor does it contain adequate provision for the reëstablishment of the rights and possession of absentee or heirs.

The Act of 1915 cannot be sustained as an exercise of the power of the Commonwealth to escheat the property of persons dying without known heirs or next of kin.

It does not apply a recognized presumption of law, but seeks arbitrarily to establish new presumptions not warranted by the circumstances, and invented solely to enable the State to acquire the property.

Except in the case of tangible property (Section 9) the procedure does not require the judicial determination

of the fact of death without heirs or legatees: Crawford v. Com., 1 Watts 480; West's App., 64 Pa. 186; West v. Penna. Co. for Ins., etc., 64 Pa. 195; Hamilton v. Brown, 161 U. S. 256; Wilbur v. Tobey, 16 Pickering 177.

The Act of 1915 cannot be sustained as an exercise of the power of the Commonwealth to appropriate private property to public use: Humphrey v. County Nat. Bank, 113 Pa. 417; Gardner's Est., 228 Pa. 282; West v. Penna. Co. for Ins., etc., 64 Pa. 195; Bank of Louisville v. Board of Trustees, 83 Ky. 219.

*John M. Freeman,* of *Watson & Freeman,* with him *H. F. Stambaugh,* for appellant, The Union Trust Company.

*Wm. M. Hargest,* Deputy Attorney General, with him *Frank M. Eastman* and *Francis Shunk Brown,* Attorney General, for appellees.—There is no doubt as to the constitutionality of this statute, but if there were, such doubt must be resolved in its favor: Com. v. Dollar Savings Bank, 259 Pa. 138; Cunnius v. Reading School District, 206 Pa. 469; Provident Savings Inst. v. Malone, 221 U. S. 660.

Even assuming for the sake of argument that there may be some doubt as to the constitutionality of the Act of 1915, it can only be a doubt, and still the act must be sustained: Com. v. Moir, 199 Pa. 534; Scowden's App., 96 Pa. 422.

There is full power in the Commonwealth to escheat personal property and to fix presumptions of abandonment.

Neither common law nor constitutional provision is needed to escheat property held by corporations: Merchants Bank of Easton v. Shouse, 14 W. N. C. 133.

The part of the Act of 1915 requiring reports is constitutional and may stand alone.

There is complete power in the Commonwealth to fix the time when presumptions of death or abandonment of

property arise: Mobile J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35; Provident Institution for Sav. v. Malone, 201 Mass. 23.

The power to provide for the presumptions of death and abandonment and to base proceedings for escheat upon such presumption, is complete.

The plaintiff has no standing to raise the constitutional questions in this proceeding.

The Act of 1915 does not impair the obligation of contract: Com. v. Dollar Savings Bank, 259 Pa. 138; Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531.

The thing sought to be restrained by this bill is simply the demanding of reports and the publication of names of depositors and owners of property who come within the act.

No property is taken from the trust company, much less is any taken without due process of law or without compensation: Prov. Inst. for Sav. v. Malone, 221 U. S. 660.

The act does not authorize the taking of private property for public use, either without authority of law, without compensation, or without due process of law.

The notice by mail which the auditor general must send, the advertisement in the county newspapers, and the proceedings in court abundantly satisfy the "due process" clause of the Constitution: Davidson v. New Orleans, 96 U. S. 97; Garvin v. Daussman, 114 Ind. 429; The Matter of Ross, 38 La. Ann. 523; New York & N. E. R. R. Co. v. Bristol, 151 U. S. 556.

If the State of Pennsylvania, under both the State and Federal Constitutions, can fix a presumption of death because of absence, for the purpose of administering estates, certainly it can fix the presumption of abandonment and death for the purpose of escheat.

OPINION BY MR. JUSTICE FRAZER, May 21, 1919:

These two appeals raise the same question and will be considered together.

Plaintiffs, in their bills, seek to enjoin the auditor general of the Commonwealth from enforcing the provisions of the Escheat Act of June 7, 1915, P. L. 878, on the ground the legislation is unconstitutional. A demurrer filed to the bill was sustained by the court below, the constitutionality of the act upheld and a decree entered dismissing the bill, from which decree plaintiffs appealed.

Section 1 of the act requires every person, bank, safe deposit company, trust company and corporation, doing business under the laws of Pennsylvania, with certain exceptions named, engaged in receiving deposits of money, to file a report with the auditor general each year, showing the deposits on hand and held for another, that have not been increased or decreased or on which interest has not been credited at the request of the owner within fourteen or more successive years. Section 2 requires a similar report to be made by persons or corporations acting in a fiduciary capacity and every person and corporation or partnership association which receives and holds money or property of another for storage or safekeeping, to which money or property actual access shall not have been had by the person for whom the same is held for a period of seven or more successive years. Section 3 requires every corporation, company, bank, trust company, insurance company and partnership organized or doing business under the laws of this State, except building and loan associations, to report all dividends or profits declared to a stockholder or member and not paid for three years; all debts and interest on debts due by it to a creditor and unpaid for three years; and all property held by it for another and for which no demand has been made for seven years. Under subsequent provisions of the act, deposits of money escheat in seventeen years (section 7); dividends or profits, debts and interest thereon in six years (section 7); and property received for storage or safekeeping, or property held for the benefit of another, in ten years (section 9).

Whether or not the act applies to national banks we have determined adversely to the Commonwealth in Columbia National Bank v. Powell, in an opinion filed herewith (the next case), and what has been said there need not be repeated. This opinion will be confined to a consideration of the constitutional questions raised by appellants.

There seems to be no room for doubt that the Commonwealth, by virtue of its sovereign power, may take charge of property abandoned or unclaimed for a period of time, or which has no known owner: Com. v. Dollar Savings Bank, 259 Pa. 138, 145, and cases cited. This right is not seriously disputed; it is contended, however, in the first place, that the act in question violates Article 1, Section 17, of the Constitution of Pennsylvania, and Article I, Section 10, of the Constitution of the United States, by impairing the obligation of the contract between the owner of the property and the depositary, the theory being that, upon money being deposited in a bank, a contract attaches between the depositor and the bank under which the latter is bound to return to the former, on demand, the amount of the deposit, and that the provisions in the act for the taking of money or other property after the expiration of a specified time, if the owner has not been heard from, amounts to a violation of this contract. The agreement of the bank or depositary, however, is merely to keep the money of the depositor until it is demanded by the owner, or his duly authorized representatives. It agrees to pay on demand. When demand is made the contractual relation ceases, there being no vested right to continue the contract in force thereafter, or for any definite time. If the depositor should die or make an assignment, his personal representative or assignee succeeds to his right to make demand for the money and the bank is in duty bound to make payment. A statute of escheat, in effect, simply provides for a termination of the contract of deposit, at the instance of the Commonwealth and by virtue of its

sovereign power, where there are no heirs to claim the property, after the death of the owner, or after expiration of such reasonable time as may be fixed by law to raise a presumption of death.  While the act requires the filing of certain reports for the information of the Commonwealth a considerable time before an escheat is declared, this provision is reasonable and enables the Commonwealth to follow up property as to which there is no apparent claim of ownership.  The right of escheat has been recognized under the English law from the earliest times and has also been the subject of continuous statutory regulation in Pennsylvania from colonial days, the latest general law on the subject being the Act of May 2, 1889, P. L. 66; the validity of these acts has been sustained without suggestion that their enforcement violates any contract between the owner of the property and the person or institution in whose hands the property was deposited or placed for keeping.

Appellants further argue that the statute contemplates the escheat of property of living persons, or, at least, fails to provide for the proper ascertainment of the fact of death of the owner without known heirs, and, in effect, deprives him of his property without due process of law. Section 14 requires the report to contain the names and addresses of the depositors or owners of the money, property or claims, as the case may be, with the nature and amount of the property.  Section 5 directs the auditor general to prepare and keep open to public inspection an alphabetical index of the names of such persons, with reference to the reports, and, under section 6, he is directed to notify the person shown to be entitled to money or property, by mail if possible, and shall duly publish, in manner prescribed, in the city or county in which the property is held, a list of the names, addresses and amount of money or character of property belonging to such persons.  Thereafter, if the owner fails to make claim to the property for the period stated, which varies according to the nature of the property, the same shall

escheat to the Commonwealth. Provision is there made (section 7) for proceeding by bill in equity on part of the Commonwealth at the instance of the attorney general and against the debtor and its creditors to determine issues of fact and for a decree of escheat, with further provision, in section 8, that the lawful owners of such property may, within ten years after payment into the State treasury, recover the same upon satisfactory proof to the auditor general of their ownership. While the fact of death is established only presumptively by failure of the owner or any known heirs to appear, this is not, in itself, sufficient to constitute a denial of due process of law or the equal protection of the law within the meaning of the provisions of the State and Federal Constitutions: Mobile J. & K. C. R. R. Co. v. Turnipseed, 219 U. S. 35. The death of a person whose whereabouts is unknown, and the total absence of heirs, can, in the very nature of the case, seldom be established by affirmative proof. A familiar illustration of the right to rely upon presumptive proof of death is the Pennsylvania statute relating to the presumption of death arising from seven years' absence unheard of. The right of the State to take steps to conserve property within its jurisdiction which has no known owner is fully sustained: Cunnius v. Reading School Dist., 206 Pa. 469, affirmed in 198 U. S. 458; as is also the power to base proceedings for escheat upon the presumption of death arising from inability to discover the owner of property or any living heirs: Provident Institution for Savings v. Malone, 201 Mass. 23, affirmed in 221 U. S. 660; Mobile, etc., R. R. Co. v. Turnipseed, supra.

Appellants also claim the title to the act is insufficient and misleading in various respects, and argue that the term "escheat" is used only in a case where the intention is to take the property of those who have died intestate and without known heirs, and that the act provides for the escheat of deposits of money or property of living persons as to which no notice is given in the title. A

reading of the act shows the evident intention of the legislature was not to appropriate or confiscate property of a living person, but to establish a period at the expiration of which the owner of property will be presumed to be dead unless his whereabouts, or that of his heirs, shall have been ascertained in the method prescribed by its provisions. That the State has power to fix a time when the presumption of death of the owner, or abandonment of the property, may arise cannot be open to question, as heretofore pointed out: Com. v. Dollar Savings Bank, supra; Mobile, etc., R. R. Co. v. Turnipseed, supra. The time is fixed by the statute after which such presumption will arise and establishes a form of procedure to have the fact judicially ascertained. The law is, therefore, properly designated an escheat act.

The title is sufficiently broad to cover the various provisions of the statute relating to the matters here in controversy, including the fact that certain penalties are provided for violation of its terms. The first clause of the title is general, providing "for the escheat of the deposits of money or property of another received for storage or safe-keeping." This language is sufficient to indicate the purpose of the legislation, a necessary or appropriate procedure for the accomplishment of its purpose, and fairly to give notice and reasonably lead to an inquiry as to the contents of the body of the law. This court has expressly decided that the constitutional provisions relating to title of acts of assembly does not require the title to give notice of penalties or other punishment for violations: Com. v. Sellers, 130 Pa. 32; Com. v. Muir, 180 Pa. 47. That a title, general in terms and relating to but one subject-matter, should contain a complete index to the provisions contained in the act is unnecessary: Fredericks v. Penna. Canal Co., 109 Pa. 50; Myers et al. v. Com., 110 Pa. 217; Com. v. Charity Hospital of Pittsburgh, 198 Pa. 270; Rose v. Beaver County, 204 Pa. 372.

While the question does not affect either party to the present record, it may be noted, in passing, that the provisions for reporting dividends, profits, debts and interest on debts of corporations, companies, banks, trust companies, insurance companies, limited partnerships and partnership associations, both in the title and section 3 of the act, are limited to those organized under the laws of the State of Pennsylvania, and, consequently, do not apply to foreign corporations doing business in this Commonwealth.

The contention that the law is special legislation cannot be sustained. While its provisions are limited to corporations organized and doing business under the laws of the State of Pennsylvania, and, accordingly, exclude national banks, as we have held in Columbia National Bank v. Powell, and is also confined to corporations receiving money or property of others for safe-keeping, and expressly excludes from its provisions mutual savings fund associations not having capital stock represented by shares, and building and loan associations, we find nothing to indicate this classification is not proper. Legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see it is founded on real distinction in the subjects classified and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it as resting on a sound basis. The test is, not wisdom, but good faith in the classification: Seabolt et al. v. Co. Comrs. of Northumberland County, 187 Pa. 318, 323; Com. v. Grossman, 248 Pa. 11, 15; Com. v. Puder, 261 Pa. 129, 136. "Classification, to be valid, must be based upon a necessity springing from manifest peculiarities clearly distinguishing those members of one class from each of the other classes, and imperatively demanding legislation from each class sepa-

rately that would be detrimental to the others": Ayars's App., 122 Pa. 266; Com. v. Puder, supra, page 135. The dissimilarity between building and loan associations and saving fund societies, for illustration, as compared with banks of deposit and other corporations receiving deposits of money and securities for safe-keeping, is sufficient to warrant placing the former in a class by themselves and exempting them from the provisions of an act of the character here in question. In Com. v. Puder, supra, this court sustained legislation regulating the business of loaning money in small sums to a certain class of persons.

It may be suggested that in view of the provisions of the Constitution prohibiting special legislation on the subject of corporations, namely, article 3, section 7, forbidding the passage of local or special laws "creating corporations, or amending, renewing or extending the charters thereof," and article 3, section 21, forbidding the passage of statutes of limitations in the case of corporations different from those applying to natural persons, and, as article 3, section 7, contains no provision relating to escheats, therefore, the legislature may pass special laws on the subjects of escheats and corporations other than as prohibited above, if they do not violate other sections of the Constitution. This is undoubtedly a correct statement of the law if we add the qualification that the legislation must not conflict with the portion of article 3, section 7, forbidding the "granting to any corporation,......any special or exclusive privilege or immunity." If it be held that imposing a liability of property to be escheated when in the possession of corporations embraced by this act, by indirection grants a "special or exclusive privilege or immunity" to other corporations not covered by the act, then the statute would be invalid unless upheld on the ground of proper classification, as detailed in the preceding paragraph. This view of the act, however, was not presented to us,

either in the printed or oral argument, and we need not, therefore, pass upon it.

Under section 15 the bar of the statute of limitation and presumptions of payment will not affect the duty to make report and liability to escheat according to the provisions of the act.   The legislature has power, if deemed necessary, to establish a new period of limitation, or change an existing one without violating any constitutional prohibition, providing, of course, notice of such provision is contained in the title of the statute. While the subject of the statute of limitations is not expressly referred to in the title of the law under consideration, the general subject-matter provides for the escheat of money, property, debts, etc., and this language necessarily includes the fixing of a limitation period and suggests to persons interested in the subject-matter the likelihood of a provision relating to the effect to be given the existing statutes of limitation on debts subject to escheat.   In other words, the fixing of a limitation period would be germane to the general subject-matter expressed in the title.

We may add, in this connection, that consideration of the effect of the proviso to section 16 is unnecessary for the reason that appellants are liable even if that clause is given full force and effect.

For the reasons set forth the constitutionality of the act is sustained.

Judgment affirmed, appellant to pay costs of appeal in each case.


CONCURRING OPINION BY MR. JUSTICE MOSCHZISKER:

While concurring in the result reached, I disagree with certain of the reasons given by Mr. Justice FRAZER. For instance, appellants' bills show these companies reported neither unpaid debts nor dividends, this being the case, even though the present act contains no title notice of any change of law affecting the application of the statute of limitations, the question whether such debts

and dividends may be treated as escheatable property when, qua debts, their recovery would be barred, is not a point before us for determination; therefore, according to my view, the subject of the applicability of the statute of limitations has no proper place in our considerations, and should not be referred to in the majority opinion. Were the status of such property, in any particular, up for determination, then I should be compelled to dissent from the decrees entered if they depended at all for support on the doctrine of classification; because, to my mind, no good reason has been, or can be, given why debts due by, and unclaimed dividends on the stock of, "corporations receiving deposits of money, securities or other property for safe-keeping" should be subject to escheat, while debts and dividends of other corporations are not; yet Section 16 of the Act of 1915, in effect, makes this entirely artificial and irrelevant distinction. In my opinion the doctrine of classification has no relevancy. There is, however, nothing in the fundamental law of Pennsylvania which forbids special legislation on the subject of escheat; consequently, speaking generally, it is always the right of the lawmakers to determine what an escheat act shall comprehend.

Again, I cannot agree with Judge FRAZER's intimation that, but for the doctrine of classification, the act under consideration might infringe the provision of Article III, Section 7, of the Constitution, which forbids the passage of laws "granting to any corporation, association or individual any special or exclusive privilege or immunity." We held in Clark's Est., 195 Pa. 520, this language means exactly what it says and no more, that it only prevents an express grant of a "special or exclusive privilege or immunity" to a particular corporation or corporations; and this the present statute does not attempt to do. The provision in question has no relevancy whatever to incidental benefits derived through the operation of a statute (Nolan v. Jones, 263 Pa. 124, 130; Clark's Est., supra, p. 528); were it necessary to

consider such effect but few acts of assembly could stand constitutional tests: Searight's Est., 163 Pa. 210, 217; Sugar Notch Borough, 192 Pa. 349, 356.

The statute in hand being an escheat act, the legislature had full power to pass it, irrespective of the doctrine of classification; for that reason, and that reason alone, I concur in the affirmance of the decrees entered by the court below.

Chief Justice Brown and Mr. Justice Kephart join in this opinion.

Opinion filed July 18, 1919, as of May 21, 1919, by consent of the Chief Justice and other members of the court.