## In re Pennsylvania Railroad Company

*Ralph B. Umstead,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for Commonwealth.

*Spencer G. Nauman, Frank A. Bedford, Jr., John D. M. Hamilton, John Dickinson, George Wharton Pepper,* and *Pepper, Bodine, Stokes & Schoch,* for respondent.

RUPP, J., April 28, 1943.—Pursuant to The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1 et seq., at the request of the Department of Revenue, the Attorney General petitioned this court for the, escheat and award to the Commonwealth of certain unclaimed wages earned by former employes of respondent, aggregating $590,851.06, plus the increments thereof.

A rule, answer, and hearing followed.

In its petition the Commonwealth alleged, inter alia, that every payroll period respondent computed, recorded, and "set aside" for payment the earnings of each of its employes; upon the failure of certain of them

to collect their compensation respondent retained the sums set aside, indicating the nonpayment thereof and the liability therefor on its books of account; to date these unclaimed wages remain unpaid; the persons entitled to them have been unknown for upward of seven years; the moneys are without a rightful owner; and that "under the provisions of the acts of assembly in such case made and provided" the above amount escheats to the Commonwealth, together with the increments thereof.

In answering, respondent admitted that it calculated and recorded all earnings; certain wages were not collected and subsequently were listed as unclaimed, and the persons entitled to approximately $4,500 of the sum involved are unknown. However, it emphatically asserted that the identity of all other claimants is known and specifically denied the remainder of the Commonwealth's allegations.

It is too well established to need elaboration here that in Pennsylvania escheat is regulated by statute: Desilver's Estate, 5 Rawle 111 (1835); Wallace v. Harmstad 44 Pa. 492 (1863); In re The Harrisburg Gas Co., 38 D. & C. 611 (1940), and In re Harrisburg Bridge Co., 38 D. & C. 657 (1940). To this end the legislature passed various enactments specifying under what circumstances the Commonwealth may take particular property by escheat. Contrary to the dictates of proper pleading, in its petition the Commonwealth failed to designate, or even suggest, the statutory authority for its claim. However, at the argument and in its brief it relied on two acts relating to escheat, contending, alternately, that either:

1. The funds involved are being held in trust, and thus are escheatable under the Act of April 17, 1869, P. L. 71, as partially supplied, 27 PS §332; or

2. The Commonwealth is entitled to the award by virtue of the Act of June 7, 1915, P. L. 878, as amended

and incorporated into The Fiscal Code, supra, which provides for the escheat of unclaimed money or property held by certain agencies.

## Discussion

1. Are the moneys claimed by the Commonwealth being held in trust?

This query necessarily requires a somewhat detailed review of respondent's payment system.

The testimony disclosed that the "cash" and "check or draft" methods were used.

Under the former, the payroll of each division was prepared by its employing officer, audited and approved by the auditor of disbursements, and transmitted by the treasurer, together with sufficient cash drawn from the company's general funds, to the paymaster of the proper division for direct payment to the individual employes.

Any unexpended funds remaining in the paymaster's hands by reason of employes' failure to appear and be paid were returned to the treasurer. On the following payday, not only the current payroll, but a so-called "payroll duplicate" carrying the unclaimed earnings for the previous period were furnished the paymaster, together with enough money to pay both current and pending wages. This procedure continued until each duplicate with its covering cash had been carried by the paymaster for six months, whereupon both cash and duplicate were returned to the treasurer. The money was deposited in a bank of general receipt and the duplicate went to the auditor of disbursements, who listed the items indicated thereon in his unclaimed wages account.

Under the "check or draft" method, the payroll was prepared, audited, and approved as described above. The auditor of disbursements then requested of the treasurer the necessary checks to meet the payroll. The latter determined the banks upon whose general funds

the checks should be drawn and had them printed and transmitted to the auditor in blank. The auditor's office then filled in the names of, and the amounts due, the employes, returned the checks to the treasurer for signature, and, upon again receiving them, forwarded them to the employing officer, who acted as distributing agent for their delivery to the individual employes.

The distributing agent retained any unclaimed checks for 10 days. They were then returned to the treasurer who held them for six months, after which they were canceled and a list of them supplied the auditor of disbursements. The latter entered the amounts of the checks and the names of the payees in the unclaimed wages account.

All claims for unpaid wages listed in that account, whether earned during the cash or check periods, were properly verified and, upon certification of their authenticity by the auditor of disbursements, were paid by checks drawn by the treasurer on a general receipts and withdrawals account in the Philadelphia National Bank. The unclaimed wages account was marked accordingly.

After unclaimed earnings had been carried in that account for a certain period—originally six and later fifteen years—they were cleared to "profit and loss". If payments were made to tardy claimants after such transfer, "profit and loss" was charged accordingly.

In the foregoing description of respondent's payment methods we are unable to recognize any of the distinguishing features of a trust. Conspicuously absent is the slightest intimation that respondent intended, attempted or effected the establishment of a trust. We see only an employer-debtor's acknowledgment of, and his efforts to discharge, a debt owed his employes-creditors for services rendered. The duration of the obligation could not, and did not, alter its identity or that of the parties. The Commonwealth's emphatic reiteration that the successive steps detailed above—

particularly the computation and recording of the amounts due, the withdrawal of cash or the drawing of checks, and the listing of uncollected wages as "unclaimed"—automatically raised a virtual, if not a factual, trust is absurd. To follow this reasoning to its inevitable conclusion would be to hold that the mere installation and function of a fiscal system may give rise to a trust. To state the proposition is to refute it. There are many mediums for the establishment of trusts, but this is not one of them.

Accordingly, the moneys claimed are not escheatable under the Act of April 17, 1869, P. L. 71, as partially supplied, 27 PS §332, nor under any other statutory provisions permitting the escheat to the Commonwealth of funds held in trust.

2. Is the Commonwealth entitled to the award by virtue of the Act of June 7, 1915, P. L. 878, as amended and incorporated into The Fiscal Code, supra?

Generally, the act requires the report of certain unpaid or unclaimed moneys and property held by specified custodians and provides for the subsequent escheat of such moneys or property to the Commonwealth.

In its briefs and at the argument respondent conceded that there are general provisions in the statute which appear "sufficiently broad in intent and purpose to include the matter here under consideration". However, it contended that the act, and the reporting provisions reënacted in The Fiscal Code, supra, properly have never been invoked against it by virtue of the saving proviso contained in section 16.

The section reads as follows (27 PS §243) :

"No fee or reward shall be paid to any person for information which shall result in the escheat of any property which is the subject-matter of this act: Provided, however, That this act shall not apply to corporations which are not engaged in receiving deposits of money, securities, or other property for safe-keeping."

The Commonwealth maintains that since the proviso appears at the end of section 16, relating to informers' fees or rewards, its provisions must be confined to that section and that the act should be construed as applying to respondent and other corporations not "engaged in receiving deposits of money, securities or other property for safe-keeping."

At the outset it should be remembered that the object of all interpretation and construction of statutes is to ascertain and effectuate the intent of the legislature, and that in ascertaining the legislative intent the presumption always is against ridiculous results: sections 51 and 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §§551 and 552.

To accept the Commonwealth's interpretation of the proviso would be to hold that corporations which are not engaged in receiving deposits of money, etc., may be rewarded for acting as informers. Far from subscribing to the Commonwealth's belief that such a result would be "clear and logical", we find it so incongruous and untenable as to give us no hesitancy in agreeing that it neither was nor could have been contemplated by the legislature.

Moreover, the Commonwealth has overlooked the fact that the legislature used the word "act", not "section", in the proviso. Thus, it is clear that, viewed either in the light of its effect or its wording, the proviso was intended to apply to the entire act.

The above conclusions dispose of the Commonwealth's position that a proviso can modify only the clause or portion of a statute which immediately precedes it or to which it is appended, since it is well settled that the rule does not apply where, as here, the legislative intent that it shall extend to or qualify other portions of the enactment is clearly disclosed: 59 C. J. 1090, §640. See also Endlich on the Interpretation of Statutes 258, §186, to the effect that the "words and import" of a proviso are controlling and not its location.

Furthermore, in urging its construction of the proviso, the Commonwealth has entirely ignored the fact that during the early tests of the constitutionality of this act both this court and the Supreme Court declared that the proviso modifies the entire statute and not section 16. See The Columbia National Bank v. Powell, etc., 20 Dauph. 102 (1917), 22 Dauph. 7 (1918), Union Trust Company of Pittsburgh v. Powell, etc., 22 Dauph. 7 (1918), 265 Pa. 71 (1919), and Germantown Trust Co. v. Powell, etc., 20 Dauph. 106 (1917), 22 Dauph. 7 (1918), 265 Pa. 71 (1919) (particularly Justice Moschzisker's concurring opinion).

Accordingly, through the years respondent and other corporations not engaged in receiving deposits of money, etc., have been excluded from the purview of the act. Since no alteration in the text of the proviso has occurred, and no judicial mandate restricting its operation to section 16 has been pronounced, at this late date we cannot see any basis for the Commonwealth's position. If, as it contends, the comprehensive amendments made to the balance of the enactment clearly indicate a legislative purpose to bring corporations such as respondent within its provisions, the General Assembly had ample opportunity to amend the proviso accordingly. That it failed to do so would indicate the opposite to be true. Also, it is noteworthy that since the statute was last revised this court, speaking through Hargest, P. J., again has stated that the Act of 1915, as amended and incorporated, applies only to corporations engaged in receiving deposits of money, etc.: In re The Harrisburg Gas Co. and In re Harrisburg Bridge Co., supra.

In view of all the foregoing, the far-reaching and unprecedented interpretation which the Commonwealth urges cannot be endorsed.

This conclusion makes it unnecessary for us to consider the proposition advanced in respondent's supplemental brief to the effect that, even without the proviso,

the reporting provisions of the act, as reënacted in The Fiscal Code, supra, save respondent from its operation.

Since the unclaimed wages in question are not escheatable under either of the acts advanced by the Commonwealth, the rule must be discharged.

And now, April 28, 1943, the rule to show cause why unclaimed wages in the sum of $590,851.06, plus the increments thereof, should not escheat and be awarded to the Commonwealth is hereby discharged.