## In re Metropolitan Edison Company

*Theodore G. Confer*, for Commonwealth.
*Harold J. Ryan*, for respondent.

SHANAMAN, J., January 4, 1944. — The Attorney General of the Commonwealth of Pennsylvania, acting pursuant to the Act of June 25, 1937, P. L. 2063, as amended, 27 PS §§434 to 447, petitioned for a rule on Metropolitan Edison Company, a corporation, to pay over certain funds in its hands to the Commonwealth. The Metropolitan Edison Company answered, admitting the possession of certain moneys, and challenging the validity of the statute under which petitioner acted. The moneys represent customers' advances or deposits placed by customers with respondent as security for payment of bills for electric or gas service furnished by the company to said customers. Respondent contends that the Act of June 25, 1937, P. L. 2063, as attempted to be applied in this proceeding, is unconstitutional, for two reasons, both based on the language of its title, which reads as follows:

"An act providing for the payment into the State Treasury, without escheat, of certain moneys and property subject to escheat under existing law, namely unclaimed dividends and profits, certain debts, and interest on certain debts, proceeds of policies of insurance, stock and customers deposits held by certain limited partnerships and unincorporated associations, joint-stock associations, companies and corporations doing

business under the laws of this commonwealth; declaring the legislative intent with respect to such payments; requiring reports of such money and property by, and imposing other duties upon, such partnerships, associations, and corporations; conferring powers and imposing duties on certain State officers, boards, and departments; providing for jurisdiction of courts, and for proceedings for the recovery of such moneys and property by the Attorney General at the suggestion of the Department of Revenue; providing for refunds of such moneys and property; and prescribing penalties."

It is contended, first, that since the title indicates that the act creates a system for payment to the State without escheat, it fails to give notice that section 8 of the act provides a system of escheat, and therefore violates article III, sec. 3, of the Constitution of Pennsylvania, which requires that the title of an act of assembly shall clearly express the subject of the act; secondly, that since the title refers to assets "subject to escheat under existing law", the act is unconstitutional when attempted to be applied to property not subject to escheat under existing law. It is contended that the deposits in question were not subject to escheat under existing law, unless the owner is unknown, and that petitioner fails to aver such fact and in fact admits that the owners of the several deposits have been ascertained.

The question involved has already been adjudicated in the Counties of Dauphin: In re Harrisburg Bridge Company, 38 D. & C. 657; In re The Harrisburg Gas Company, 38 D. & C. 611; Philadelphia: In re Philadelphia Electric Company et al., 39 D. & C. 53; and Lehigh: Pennsylvania Power & Light Company case, 2 Sept. Sessions, 1941, C. P. Lehigh Co., opinion of Henninger, J., dated July 19, 1943. The Dauphin County court held the title objectionable, but the Philadelphia and Lehigh County courts have sustained the legislation. Although the question is not without dif-

ficulty, we are of opinion that the respondent's objections, founded on the alleged insufficiency of the title to the Act of 1937, must be overruled. It is true that section 8 of the act does provide for an escheat of certain moneys or property. Section 9 provides the procedure for payment of such moneys or property to the State Treasury without escheat. In the present case the Attorney General has proceeded under section 9, and not under the escheat provisions of section 8. If the escheat provisions of section 8 have not been clearly expressed in the title of the act, and even if it were necessary to hold section 8 for that reason unconstitutional, it does not follow that the remainder of the statute must fall. Section 12 of the act provides that if any part or section of it be held unconstitutional, the remaining provisions of the act shall be given full force and effect. Such a provision for the severance of unconstitutional and constitutional parts of an act, has been approved in the cases of N. R. Bagley Co., Inc., v. Cameron, 282 Pa. 84, and Rutenberg et al. v. Philadelphia et al., 329 Pa. 26. There can be no difficulty in sustaining the statute with section 8 eliminated, were it necessary to conclude that that section is unconstitutional.

Respondent's remaining contention goes to the meaning of the words, "subject to escheat under existing law". Section 3 of the act, par. 2, provides as follows:

"Every company shall make a report of any and all customers, advances, tolls or deposits held by it, and under the terms of the deposit agreement due and owing to the person or company depositing the same and unclaimed by said person or company for six (6) or more successive years next preceding the first day of said month."

A similar period of time during which no claim has been made for the property is in every case mentioned in section 3, and is the essential element upon which the right of the State to collect the asset depends. Section 9 makes provisions for such a petition as that brought in

the present case, to bring into the State Treasury "any items of money or property required to be reported under the provisions of this act". It is important to bear in mind that the statute is not primarily an escheat act. On the contrary, it lays down a preliminary and alternative procedure, short of escheat. Therefore, the conception that the commonwealth, when petitioning under section 9, must aver facts which, if true, exclude all claimants but the commonwealth is mistaken. The purpose of the act is to provide a method whereby the commonwealth may without escheat ascertain the existence of property so long unclaimed as to be liable to become lost to the owner, may identify such property by compulsory reports, may receive it into the State Treasury, and hold it not merely for the benefit of the commonwealth but also for the owner. The interest of a person who has forgotten or has inadvertently failed to collect a deposit for such a length of time that the statute of limitation has prima facie run against him is subserved and the position of such owner is directly bettered, by section 3 of the act, requiring reports by the company of such items, and by section 5 requiring the commonwealth to notify such owner of his interest. Such advantage is also inferable not only from the ease with which the payments of preliminary deposits may be forgotten, but from the fact that respondent in its answer avers that the list of interested parties, attached to the petition, has been reduced by the company's payments to such parties. Furthermore, the company might conceivably be entitled to take advantage of the bar of the statute of limitations if it chose to plead it against a depositor; but the Commonwealth, under section 10 of the Act of 1937, yields up such defense by its consent to refund the deposit to the true owner upon proper demand and proof. While the mere running of the statute of limitations against a claim and the consequent erection of a legal bar to its recovery does not indicate that the owner is dead without

heirs or legatees, or is unknown, or has abandoned the property so that it is now ownerless, nevertheless, in the light of the beneficial remedy intended by the act, a prima facie presumption that the property in question is liable through nonclaimer to be escheated, may or does arise. In such sense, the claim or estate is "subject to escheat under existing laws". The phrase "subject to" may mean, "Exposed; liable, from extraneous or inherent causes; prone: . . . Hence—Exposed or liable, as to what may confirm or modify": The Century Dictionary and Cyclopedia, Vol. IX, p. 6020.

The view we have taken is, we think, supported by the case of Commonwealth v. Dollar Savings Bank, 259 Pa. 138, which involved a suit in assumpsit brought by the Commonwealth against a savings bank to recover unclaimed deposits, under the Act of April 17, 1872, P. L. 62. The court said (pp. 144, 145) :

"In disposing of the first of the above propositions, we must keep in mind that the statute here in question is not an escheat act. In other words, it does not provide for seizing property presumed to be without an owner, but rather for the taking into possession by the sovereign Commonwealth, for the protection of both State and owner, of a certain class of property which is subject to escheat. . . . The rights of the owner are amply protected by giving him a cause of action against the Commonwealth, with full provision for legal proceedings and final process, under which either he or his legal representatives may recover the amount of the deposit upon proof of identity. . . .

"While, by operation of the Act of 1872, supra, right of action against the depositary is taken away, yet this is no substantial deprivation to the owner of the deposit, for instead of that right, as soon as his money is turned over to the State treasurer, he is afforded an action against the Commonwealth and provided with a court in which, without limitation of time, he may

prove his claim. . . . Since the State, with its power of taxation, is always solvent, it would be impossible to give better security.

"The act before us does not, in so many words, say that a savings fund deposit which for thirty years has been entirely neglected by its owner shall be presumed to have been abandoned, but it is plain that such is the theory upon which the legislation rests; and it is well established that every sovereign State has jurisdiction to take charge of apparently abandoned or unclaimed property: Cunnius v. Reading School District, 206 Pa. 469; s. c., 198 U. S. 458; Attorney General v. Provident Institution for Savings in Town of Boston, 201 Mass. 23; s. c., 221 U. S. 660. When, as here, such property is taken in charge by the State, and the owner or his legal representatives are given an unlimited right to reclaim, with a pledge of all unappropriated moneys in the public treasury, so far as may be necessary, to repay the amount thereof when duly proved, this is simply an exercise of authority over property actually within the jurisdiction of the State, and liable to escheat, for the due protection of all parties in interest, including the owner . . ."

"There seems to be no room for doubt that the Commonwealth, by virtue of its sovereign power, may take charge of property abandoned or unclaimed for a period of time, *or* which has no known owner": Germantown Trust Co. v. Powell, 265 Pa. 71, 77. (Italics supplied.)

"A reading of the act shows the evident intention of the legislature was not to appropriate or confiscate property of a living person, but to establish a period at the expiration of which the owner of property will be presumed to be dead unless his whereabouts, or that of his heirs, shall have been ascertained in the method prescribed by its provisions. That the State has power to fix a time when the presumption of death of the owner, *or* abandonment of the property, may arise cannot be

open to question, as heretofore pointed out": id., 79, 80. (Italics supplied.)

And now, to wit, January 4, 1944, a rule absolute. Counsel may submit to court a proper form of decree enforcing the order.

NOTE.—An appeal from the foregoing decision to the Supreme Court of Pennsylvania was discontinued on August 29, 1945.