| 88 | 429 |
|----|-----|
| 152 | 310 |

</div>

## Commonwealth *versus* Naile.

1. The provisions of the Act of December 16th 1869, which limit the time within which proceedings for an escheat must be instituted, do not apply to cases where the person, for default of whose heirs the estate escheats, does not die in actual possession of the property. An interest in remainder, therefore, cannot be escheated until the expiration of the life-estates, and the limitation only begins to run from that time.

2. An estate held in trust may be escheated when the trust has expired, and the trustee has no further active duties to perform.

January 22d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term 1878, No. 133.

This was a proceeding by the Commonwealth ex rel. George N. Watson, to escheat an estate, formerly the property of Cecilia Erben, in the possession of William E. Naile, trustee under the will of Henry Sell.

The inquisition filed showed that a jury of inquest, duly summoned, found "that Cecilia Erben, late of the city of Philadelphia aforesaid, died in 1852, intestate, without heirs or any known kindred, and that she was possessed at the time of her decease of the following personal estate, to wit: a vested interest in remainder in the one-seventh part of the residue of the estate of Henry Sell, deceased, which interest became vested in possession about June 1876, and that the said personal estate is in the possession or custody of William E. Naile, trustee under the will of the said Henry Sell, deceased."

The defendant, William E. Naile, trustee under the will of Henry Sell, filed a traverse to this inquisition, in which all the facts found by the jury were admitted, but the right of the Commonwealth to an escheat was contested upon the following grounds:

1. Because more than twenty-one years elapsed since the death of the said Cecilia Erben before the commencement of any proceeding or inquisition for an escheat, whereby the Commonwealth has become debarred from claiming the said property as escheated, according to the Act of Assembly of 16th December 1869.

[Commonwealth v. Naile.]

2. Because there is no adequate provision made by law for the escheat of said property, the same being an interest held in remainder.

3. Because there is no adequate provision made by law for the escheat of said property, the same being an interest held in trust.

The case coming on for trial, a verdict was rendered for the Commonwealth, subject to the opinion of the court whether, upon the facts as admitted, the Commonwealth was entitled to judgment. These facts will be found fully stated in the opinion of this court. The court below, Biddle, J., subsequently entered judgment for the defendant upon the reserved point, *non obstante veredicto*. This action was assigned for error by the Commonwealth, which took this writ.

*Richard C. Dale* and *Henry C. Olmstead*, for plaintiff in error. —This proceeding is not barred by the Act of December 16th 1869, Pamph. L. 1870, p. 1372, Purd. Dig. 616, because that act is in terms expressly limited to cases where there is an escheat for default of known heirs of the owner last seised or possessed of the estate. Cecilia Erben was not the owner last seised of this estate.

The Statute of Limitations does not begin to run against a remainderman until the termination of the life-estate to which the remainder is subject: Garnet et al. *v.* Lynn, 7 Casey 94.

In this case the Commonwealth, standing in the shoes of the remainderman, has no right upon which proceedings could have been instituted, until the termination of the life-estates of the father, mother and wife of Henry Sell, which occurred in 1876. In less than a year after the right of the Commonwealth accrued, the proceedings for this escheat were instituted.

It is said that there is no provision made by law for the escheat of an interest held in remainder.

The estate, however, which the Commonwealth is seeking to recover, vested in possession prior to the institution of these proceedings. While the estate continued an interest in remainder, we admit that no proceedings for an escheat could have been maintained; the right of the Commonwealth to succeed to the estate was secured by the Act of 8th April 1833, *supra*, which, under Cote's Appeal, *supra*, covers a remainder expectant upon an estate of freehold, but the proceedings to effectuate their rights necessarily rested until the termination of the life-estates.

The third point made against the Commonwealth is, that this is an interest held in trust, and that therefore it is not subject to proceedings for an escheat. It may be true that until the Act of 17th of April 1869, Pamph. L. 71, Purd. Dig. 612, pl. 5, interests held in trust did not escheat; and we are also prepared to admit the propriety of the decision in West *v.* Pennsylvania Co., 14 P. F. Smith 195, and its authority as a precedent in similar cases; but the case before the court is essentially different from West's case, because

[Commonwealth v. Naile.]

here the trust was no longer active, and the money held in trust was due to those entitled to receive it under the will.

*Alfred I. Phillips* and *E. Coppée Mitchell*, for defendant in error.—1. The Act of 16th December 1869, Pamph. L. 1870, 1372, Purd. Dig. 616, requires the Commonwealth to begin proceedings to enforce an escheat within twenty-one years after the death of the owner last seised or possessed, for defect of whose heirs the escheat takes place.

If, therefore, Cecilia Erben's ownership at the time of her death was a "seisin or possession" within the meaning of the statutes relating to escheat, the right of the Commonwealth is now barred.

2. If, on the other hand, her ownership at the time of her death was not such a "seisin or possession," the escheat can never be enforced.

The Commonwealth lays her claim under the Act of 8th April 1833, Pamph. L. 315, Purd. Dig. 611, 809. This act is a part of the intestate law, and expectant interests may pass under it, but it provides no means for its own enforcement. The Commonwealth, therefore, has proceeded to enforce it under the Act of 1787. If it cannot be enforced under this act, it cannot be enforced at all, for this statute alone provides a means for carrying escheats of decedent's estates into effect.

The Act of 1787, however, only covers property of which the intestate was "seised or possessed," at the time of death. Under sect. 3, a jury of inquest are summoned to inquire "whether the decedent was at the time of his or her death seised or possessed of any and what estate, real or personal." They are sworn only to inquire as to this, and have no authority to inquire whether the intestate had an ownership merely, without seisin or possession.

In West's Appeal, 14 P. F. Smith 186, and West v. Pennsylvania Co., Id. 195, the nature of the proceeding under this act was carefully considered. In these cases an attempt was made to escheat property in the possession of a trustee for want of known *cestuis que trust*. An escheat of such interests is provided for by the Act of 17th April 1869, Pamph. L. 1869, 71, Purd. Dig. 612; but this act, like that of 1833, is silent as to its own enforcement, and the same difficulties which arise in the attempt to enforce one, also arise in the other. The court held, in these cases, that the Act of 1869 could not be enforced under the Act of 1787, on account of the outstanding possession of the trustee.

If, therefore, Cecilia Erben died without "seisin or possession," the jury of inquest had no authority to find that an escheat had occurred, and without the finding of an inquest under the Act of 1787, confirmed by the court, the Commonwealth has no authority to proceed whatever: Crawford v. Commonwealth, 1 Watts 480.

Whichever alternative is accepted, there can be no recovery. If

[Commonwealth *v.* Naile.]

Cecilia Erben died "seised or possessed," the statute runs. If she did not, the entire proceeding is without warrant, and the claim under the Act of 1833 cannot be enforced.

3. As Cecilia Erben's interest was personal property, it is clear that she died without seisin, and as it was a remainder, it is equally clear that she died without actual possession.

Mr. Justice WOODWARD delivered the opinion of tne court, May 5th 1879.

Henry Sell died in 1842. By his will, executed on the 2d of November 1841, he devised his real estate to George M. Stroud as trustee, directing that it should be leased; that $300 of the rents should be paid annually to his wife during her life, and that the residue should be paid to his parents and the survivor of them during the natural life of such survivor. Upon the death of his father, mother and wife, the testator required that the trustee should sell the land, pay $500 of the proceeds to a nephew, and distribute the remainder amongst his brothers and sisters then living, and the children of such of them as should be dead. By a codicil the share which his brother Charles would have taken under the will was given to Cecilia Erben, an adopted daughter. William E. Naile, the defendant, became the successor of Judge Stroud in the trust. The mother of the testator died in June 1876, his seven brothers and sisters all then surviving. Immediately after the mother's death the land was sold for $15,500. The trustee filed his account in the Orphans' Court, and although it has not been finally adjudicated, a balance of about $11,500 is in his hands awaiting distribution. Cecilia Erben died on the 26th of July 1852, a minor, intestate, unmarried and without known heirs or kindred. The fund to which, if living, she would be entitled is claimed as an escheat by the Commonwealth, and the claim is resisted, first, on the ground that more than twenty-one years elapsed after the legatee's death before any proceeding by inquisition was begun, and the Commonwealth is therefore barred under the provisions of the Act of the 16th of December 1869; secondly, because there has been no adequate provision made by law for the escheat of such property, it being an interest held in remainder; and thirdly, because no existing law authorizes or warrants the escheat of an interest held in trust.

1. There can be no doubt that if Cecilia Erben had lived until the death of the mother of Henry Sell she could take this fund. And there is no doubt that while the legatees for life survived she could assert no claim to it whatever. It was an interest the title to which vested the moment Henry Sell died. It could vest in possession only on the happening of the contingency anticipated by the will. As the legatee could not have taken one step while the trust was in existence, it is not apparent how the Commonwealth, her successor

[Commonwealth v. Naile.]

in the title could have moved. Indeed, the rules laid down in West's Appeal, 14 P. F. Smith 186, and in West v. The Pennsylvania Co. for Insuring Lives, Id. 196, would have been fatal to an inquisition if one had been attempted. Manifestly, this case is not one to which the provisions of the Act of the 16th of December 1869, could have been intended to apply. That was an act to settle titles to property—lands or chattels perhaps, but some actual, existing, concrete thing—as against the right of the Commonwealth to proceed for an escheat after the lapse of twenty-one years from the decease of the owner. This legacy did not become " property" in the statutory sense to which title by possession could have been acquired until the death of the last of the legatees for life. It was an interest the nature of which was defined, but the measure of which was incapable of ascertainment. The fund had and could have no existence as such when Cecilia Erben died. It has grown out of Henry Sell's estate, but it is not "property" of which he was "the owner last seised and possessed." Nor was the legatee such an owner. She would have become "seised and possessed" of it if she had lived until June 1876. At her decease the Commonwealth succeeded to the precise rights given to her by the testator. Judge KENNEDY said in Crawford v. The Commonwealth, 1 Watts 480, " It has been adjudged that a creditor, in case of his being unable to collect his debt of the administrator on account of his having committed a *devastavit*, may have an action upon the administration bond against the sureties by way of redress. This being the settled law where there are next of kin, it must be obvious to every one that where there are none, the Commonwealth having established her right by escheat, comes in lieu of them; and why shall she not be entitled to the same security and the same remedy that are given to the next of kin? The Commonwealth in such case may well be considered *ultima hæres*, and as succeeding to all the rights and all the remedies of the heirs or next of kin in ordinary cases." The Act of the 29th of September 1787, provided for the escheat of "any real or personal estate" of which any intestate without heirs or known kindred should die " seised or possessed." In the Act of the 16th of December 1869, the word "property" was employed in the sense in which the words "real or personal estate" were employed in the Act of 1787. In both instances the language designated the same classes of subjects, and the terms of neither of the statutes applied to such an interest as that under consideration here.

2. In the second place, it has been insisted upon in behalf of the defendant that no provision has been made by law for the escheat of an interest in remainder expectant on the determination of an estate for life. This is true while the life-estate subsists. But the Act of the 8th of April 1833, has provided for the escheat of interests that were not within the scope of the Act of 1787. The 12th

7 NORRIS—28

[Commonwealth v. Naile.]

séction declared that in default of known heirs or kindred, widow or surviving husband, the real and personal estate of an intestate should go to and be vested in the Commonwealth by escheat.   While a husband may not have curtesy in his wife's estate in remainder unless the particular estate be ended during the coverture (Hitner v. Ege, 11 Harris 235), the interest of a wife in an estate in remainder vested in her husband stands on different ground.   The right of the husband as tenant by the curtesy rests on the common law, and is excepted out of the Statute of Distributions, while by the terms of that statute the wife takes an interest in all the real and personal estate of her husband.   It was held accordingly in Cote's Appeal, 29 P. F. Smith 235, that a widow was entitled to a distributive share of an estate in remainder vested in her husband at the time of his death, under the Act of 8th of April 1833, and that she had a right to partition under the Act of the 29th of March 1832, upon the determination of the estate of the tenant for life. This legacy was such part of "the real and personal estate" of Cecilia Erben as would have gone to her next of kin.   She could have bequeathed it if she had lived to attain her majority, and her legatee would have the right to its possession upon the death of the elder Mrs. Sell.   The language of the 12th section of the Intestate Act was broad enough to give the Commonwealth in 1876 the interest to which the legatee would have succeeded, and which her heirs, if she had left heirs, would have taken.

3. Another objection to the claim of the Commonwealth has been made on the ground that the interest of Cecilia Erben was held in trust.   Without the Act of the 17th of April 1869, it is probable that this objection to a recovery would be fatal.   The 1st section of that act made this provision : "Whenever any *cestui que trust* has heretofore or shall hereafter die intestate, without heirs or any known kindred, a widow or surviving husband, the beneficial interest of such *cestui que trust* in any property or effects, real, personal or mixed, shall escheat to the Commonwealth, subject to all legal demands on the same."   Before the passage of the Act of Parliament which modified it, the rule of the English common law appears to have been, that where a *cestui que trust* died without heirs, the trust did not escheat to the crown, so that the lands could be recovered in a court of equity by the king; but the trustee should hold them for his own benefit : Burgess v. Wheate, 1 Black. Rep. 123.   If no effect can be given to the Act of the 17th of April 1869, such would possibly be the legal destination of this fund.   It is true that here there is entire harmony between the brothers and sisters of the testator and the trustee.   He does not question their right to the money.   But cases might arise in which trustees would assert personal claims, and become, or attempt to become *ultimi hæredes* of dead legatees or devisees.   West's Appeal and West v. The Penna. Co., *supra*, have undoubtedly established

[Commonwealth v. Naile.]

the rule that a proceeding to escheat a fund, cannot be allowed to interfere with the management of an active trust.     In the first of the two cases, Judge AGNEW said that such a proceeding "would displace the trustee who holds the legal title, is bound to use it to maintain the purpose of the trust, and whose title and control may have to remain in order to preserve the estate, and to protect ulterior, contingent or alternative interests."     In the second case, he said : " There may be no difficulty in ascertaining the beneficial interest in the case of a dry trust, or of property in a specific form, or an unclaimed deposit or declared dividend; but such is not the case where the trust is active, with a power to convert and collect, and when the beneficial interest can only be ascertained by a settlement and a decree of distribution."     The facts of those cases were intricate, and need not be recited.     They showed an attempt to obtain control, by a proceeding to escheat, of funds in the hands and under the constant and active management of existing trustees. Upon such facts no other judgments than those entered would have been warranted.     But those judgments are not applicable here. The Act of 1833 and the Act of the 17th of April 1869, were passed in view and in aid of the Act of 1787, which remains effective and unimpaired, except as it has been modified by later legislation.     In this case, the machinery it provided can be applied without strain and without hazard of mischievous consequences. By the sale of the testator's land after his mother's death the trustee became possessed of a sum of money equal to one-seventh of the net proceeds belonging to the proper representative of Cecilia Erben.     The trust has ceased to exist.     Its active duties ended with the sale.     The trustee became the debtor of the distributees for the amount found due them in his hands.     The eighth section of the Act of 1787 gave to the Commonwealth the right to recover " by information of debt, intrusion, or action in the nature of trover and conversion, or on the case for money had and received against any person indebted to an intestate," whose estate should have been found subject to escheat, and against any person dwelling within this state having in his possession "any part of the estate, real or personal, which was of such intestate, and not mentioned or included in the inquisition."     There has been no ascertainment of the exact amount of the fund in the trustee's possession. It was agreed at the trial that it was about $11.500.     But the jury have found in favor of the Commonwealth for Cecila Erben's share of the amount.     For that share, when the final adjudication shall be made, judgment can be entered on the verdict.     " An action for a legacy, being a substitute for a bill in equity, is to be so managed as to take effect without hindrance from common-law technicalities." The court can control the execution or enter a special judgment: Seibert v. Butz, 9 Watts 490; Martzell v. Stauffer, 3 P. & W. 398.

[*Commonwealth v. Naile.*]

This involves no conflict between the Common Pleas and the Orphans' Court, and no interference with or disturbance of the trust.

> The judgment entered for the defendant *non obstante veredicto* is reversed; and it is now ordered and adjudged that judgment on the verdict be entered for the plaintiff on the point reserved.