In re The Harrisburg Gas Company

*George W. Keitel*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for petitioner.

*Arthur H. Hull*, of *Snyder, Hull, Leiby & Metzger*, for respondent.

HARGEST, P. J., March 11, 1940.—The Attorney General presented his petition pursuant to the Act of June 25, 1937, P. L. 2063, 27 PS §434 et seq., praying for an order for the payment of certain unclaimed moneys into the State Treasury without escheat.

The petition averred that the moneys were escheatable "in that they consist of dividends or profits, debts and interest on debts, customers' advances, tolls or deposits, which have remained unpaid and unclaimed for six or more successive years."

Two answers were filed raising important legal questions, and some testimony was taken.

It appears that The Harrisburg Gas Company and its predecessor, the United Gas Improvement Company, required deposits from its customers to secure payment to

the companies for subsequent service. The form of the receipt used in 1890 provided:

"Should said ........ notify the company to discontinue the supply, and pay all bills to date of discontinuance, said amount, with interest at the rate of 6 percent per annum to that date, shall be returned to him. If at any time any bill shall not be paid within ten days after presentation, said deposit may be applied on account thereof by the company."

The form used in 1930 was, in effect, the same, except 15 days were provided instead of 10 days before the application of the deposit.

The Act of 1937, supra, in question, provides in its title:

"Providing for the payment into the State Treasury, without escheat, of certain moneys and property subject to escheat under existing law, namely unclaimed dividends and profits, certain debts, and interest on certain debts . . . customers deposits . . .".

Section 1 contains a legislative declaration of intention. The statute requires reports in the month of January of each year to the Department of Revenue of all unclaimed dividends, debts, interest, and deposits, with the names of the persons to whom they are owing or who have deposited the same, where the same have been due or not demanded, as the case may be, for a period of six or more years. It provides for notice by the department to owners or claimants. Section 8 provides a procedure for escheat and contains the following:

"If the person legally entitled to such property or his legal representatives shall appear within the time limited by the court and establish his right to recover said moneys or property from the company, but for the provisions of this act, and if this right shall not be barred by the statute of limitations or presumption of payment, a decree shall be made for the payment of said moneys or other property to said person, after paying his proportionate part of the costs of the cause and of said advertising . . .".

Section 9 provides for the proceeding which was taken in the instant case, upon the petition of the Attorney General, for the payment into the State Treasury of the moneys without escheat.

Section 10 provides for an application by any claimant to the Board of Finance and Revenue for a refund "upon his making proof of his ownership or right of possession to the satisfaction of the board." It also provides:

"(c) Any claimant for any such refund of money or for the return of property may appeal by petition to the court of common pleas of Dauphin County from an adverse decision of the Board of Finance and Revenue, which court shall thereupon hear such testimony as may be offered in support of the claim and determine whether or not the claimant is entitled to any refund of money or return of property, and if so, the amount thereof or the nature or character thereof. . . . No such appeal shall be entertained, however, unless the claimant shall file with his petition an affidavit that all proof, which he proposes to offer in support of the claim, had been presented to the Board of Finance and Revenue before that board acted adversely upon his claim."

Section 12 is a severability clause. Section 13 provides:

"Bar of Statutes of Limitations.—The bar of statutes of limitation and presumptions of payment shall not affect the duty of making reports and payments to the Commonwealth under the provisions of this act."

A number of important and interesting questions have been raised:

1. That the title to the act is unconstitutional.

2. That no act of assembly or the common law made the items set forth in the Attorney General's petition subject to escheat at the time of the passage of the Act of 1937.

3. Did a trust relation arise between The Harrisburg Gas Company and its customer when the contract for service came to an end?

4. Does the statute of limitations prevent the proceeding in the instant case?

5. Does the act violate sections 1, 9, 10, and 11 of article I of the Constitution of Pennsylvania, or the fourteenth amendment to the Constitution of the United States, in that it denies due process of law?

6. Does the statute violate article III, sec. 7, of the Constitution of Pennsylvania, which provides the "General Assembly shall not pass any local or special law . . . providing or changing methods for the collection of debts"?

7. Does the statute violate article I, sec. 17, of the Constitution of Pennsylvania, in that it impairs the obligation of contracts?

8. Does the statute violate article III, sec. 21, of the Constitution of Pennsylvania, providing that no act shall prescribe any limitations of time for the bringing of suits other than those fixed by general laws?

## Discussion

1. In an opinion filed this day in the case of In re Harrisburg Bridge Company, 38 D. & C. 657 (hereinafter referred to as the bridge company case), we have discussed the question of the title to this act and have held that the title clearly limits the act in its operation to "certain moneys and property subject to escheat under existing law", and to the extent that the act is attempted to be used to operate upon any money or property which was not subject to escheat at the time of its passage, such attempted use would be unconstitutional. It is not necessary to repeat what is said upon that subject.

2. In the bridge company case, above referred to, we have discussed the proposition that escheats in Pennsylvania do not rest upon the common law but upon statutory provision.

It is necessary to consider what property was declared to be escheatable when the Act of 1937 was passed. The first statute upon the subject of escheats is the Act of

September 29, 1787, 2 Sm. L. 425, 27 PS §49, which, as declared in Commonwealth v. Naile, 88 Pa. 429, 435, "remains effective and unimpaired, except as it has been modified by later legislation."

That act is entitled "An Act to declare and regulate escheats". It recites that "no regular course of proceeding hath been heretofore provided in Pennsylvania . . . bringing into the public treasury, the value of the real and personal property of such persons, who . . . die intestate, and without any known kindred . . .". Section 2 of the act provides:

". . . if any person, who, at the time of his or her death, was seized or possessed of any real or personal estate within this commonwealth, die intestate, without heirs or any known kindred, such estate shall escheat to the commonwealth . . .".

The words "personal estate" therein used might be held not to include choses in action, debts, or claims if it were not for section 8 of the act, which provides in part:

"That if any person, at the time of the death of any intestate as aforesaid, shall be indebted to such intestate . . . the same shall be recovered to the use of the commonwealth . . .".

The proceeding therefor is therein set out.

Moreover, the legislature of 1823 passed a supplement to the Act of 1787, being the Act of March 19, 1823, 8 Sm. L. 99, where, in section 1, it was declared that the jury of inquest "shall be competent to decide whether an escheat has occurred of any goods, chattels, effects, claims, or demands . . .". It seems, therefore, clear that "claims or demands" were escheatable under the Act of 1787.

It might be said that the Act of 1823 is a procedural statute, but it unquestionably authorizes the jury to decide "whether an escheat has occurred of any . . . claims, or demands", and it is certainly a legislative declaration made in 1823 of what that legislature understood the Act of 1787 to mean.

The next statute seems to be the Act of April 17, 1869, P. L. 71, 27 PS §§332, 333, which is a further supplement to the Act of 1787. Section 2 of this act provides for the escheat of property in the hands of a trustee where the cestuis que trustent are unknown for a period of seven years. Section 3 provides for the escheat of funds in the hands of a trustee or bailee or other depositary without rightful owner. This last section is amended by the Act of May 11, 1911, P. L. 281, 27 PS §333.

Whether a trust relation exists with reference to the deposits involved in the instant case is hereafter discussed, and we have concluded that no such relation exists and, therefore, the Act of 1869, as amended, is not applicable.

The next act is the General Escheat Act of May 2, 1889, P. L. 66, 27 PS §41 et seq. As its title indicates, it was to supply a new system with reference to escheats, "and providing for more convenient proceedings relative to the same". Section 1 of the Act of 1889 provides:

"That from after the publication of this act, if any person, who at the time of his death was seized or possessed of any real or personal estate within this Commonwealth, has died or shall die intestate, without heirs or known kindred, a widow or surviving husband, such estate of whatsoever kind the same may be, whether legal or equitable, or whether the same was held by the said person in severality or as tenant in common, co-tenant, joint tenant or in partnership with any other person or persons, shall escheat to the Commonwealth, subject to all legal demands on the same."

The procedural sections of the Act of 1889 supplant the cumbersome proceedings of the Act of 1787, but unless the broad language of the first section of the Act of 1889, which provides for the escheat of any real or personal property "of whatsoever kind the same may be, whether legal or equitable", is intended to cover everything that section 8 of the Act of 1787 and the Act of 1823 covered, then those sections are still in force. We have no diffi-

culty, in view of this statutory history, in concluding that under these three statutes "claims or demands" were escheatable at the time of the passage of the Act of 1937.

As we understand the position of defendant, it is that choses in action, such as dividends and deposits, were only escheatable from corporations authorized by law to receive deposits of money, but the statutory authority for escheat of money and property in such corporations follows from an entirely different line of laws, perhaps beginning with the Act of March 6, 1847, P. L. 222, following through the Acts of April 16, 1850, P. L. 477, June 4, 1885, P. L. 73, and June 25, 1895, P. L. 283, all of which were repealed by the Act of June 7, 1915, P. L. 878, which provided a new system of payment into the State Treasury of unclaimed deposits from such companies. And the Act of 1915 has been variously amended by the Acts of July 12, 1919, P. L. 926, and April 21, 1921, P. L. 211, and incorporated into The Fiscal Code of April 9, 1929, P. L. 343.

Our interpretation is that the method provided by the Act of 1915, and its amendments, for the payment without escheat into the State Treasury of unclaimed deposits and dividends, etc., of corporations authorized to receive deposits of money and property, does not repeal or affect or take away the escheatability of claims and demands due from other corporations, and that the Act of 1937 provides a similar method for the Commonwealth to have the unclaimed dividends and credits in the hands of other corporations paid into the State Treasury without escheat.

3. Did a trust relation arise between The Harrisburg Gas Company and its customer when the contract came to an end?

The gas company required an advancement to protect it against future indebtedness to it by furnishing gas. It entered into a contract, the terms of which are heretofore set out and by which it agreed to pay interest for a certain time on those deposits. This contract certainly

created a debtor and creditor relation. The company required a deposit to protect itself. When the time for protection ceased, because the contract with the subscriber ceased, there is no element in the transaction which could change it from a debtor and creditor relation to a trust relation. In the bridge company case, we have examined at some length the question of a debtor and creditor relation, and concluded that where dividends were declared and set apart out of the earnings of the bridge company, which dividends were unclaimed, a trust relation there arose. The facts in the instant case are quite different. In the bridge company case there was no formal contractual relation existing. The bridge company declared and set apart the dividends out of its own funds. There could be no demand by the stockholder against the company for dividends prior to their declaration by the company. Here the situation is the other way around. A subscriber is required to deposit his own funds under a contract. The gas company is not required to invest those funds or to do anything with them, except to hold them for its own protection. When the contract ends, the fund still belongs to the subscriber from whose pocket it came. And we are unable to see how a trust relation arises by operation of law to give the fund a status which it did not have until the contract under which the deposit was made came to an end.

In Warner, Assignee, v. McMullin, 131 Pa. 370, 381, it is said:

"The term 'trust' is a very comprehensive one. As was said by Chancellor Kent, in Kane v. Bloodgood, 7 Johns. Ch. 90, cited in Yorks's App., 110 Pa. 79: 'Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose, is a trustee. The cases of hirer and letter to hire, borrower and lender, pawner and pawnee, principal and agent, are all cases of express trust', etc. It has never been held, however, that these and the like cases are such

technical trusts as to bring them within our limited equity jurisdiction."

We are of opinion that the broad interpretation of a trust relation cannot be applied to the deposits in question.

4. Do the statutes of limitation prevent the reach of the items in question in this case under the Act of 1937?

The cases of Philadelphia, Baltimore & Washington R. R., to use, v. Quaker City Flour Mills Co., 282 Pa. 362, 366, and Regan v. Davis, 290 Pa. 167, 173, state the well-settled rule that statutes should be interpreted to operate prospectively and not retrospectively, unless the language clearly provides otherwise. It is contended that the Act of 1937 can only operate prospectively and upon only such items as may become escheatable six or more years after the passage of the act. In view of the fact that we have held that these items were escheatable at the time of the passage of the act, we are of opinion that this proposition is not sound. However, it is also contended that section 8 of the act is inconsistent with section 13, and that, even though the act be held to operate prospectively, section 13 cannot overcome the provisions of section 8. We have no difficulty with the statute in this respect. Section 8 prescribes the procedure as escheat. The proceeding is by a bill in equity filed by the Attorney General, with a provision for proper service and publication. The section then provides:

"If the person legally entitled to such property or his legal representatives shall appear within the time limited by the court and establish his right to recover said moneys or property from the company, but for the provisions of this act, and if this right shall not be barred by the statute of limitations or presumption of payment, a decree shall be made for the payment of said moneys or other property to said person, after paying his proportionate part of the costs of the cause and of said advertising . . .".

The section also provides that the person claiming may have the issue tried by jury.

Section 13 has nothing to do with the rights of claimants; it simply provides that the "statutes of limitation and presumptions of payment shall not affect the duty of making reports and payments to the Commonwealth under the provisions of this act".

Section 13 provides for reports of all escheatable funds. What proceedings will be subsequently had with reference to them, whether to pay them into the treasury without escheat, or whether to escheat them, is a subsequent matter, and the right of the depositor is protected. If under escheat, he is protected by right of trial by jury.

There are two answers to the contention in this respect: (a) That we are not dealing with the section relating to escheat; and (b) if there is any unconstitutionality in that respect, section 12, the severability clause, would protect the rest of the act.

The right of defendant to raise this question must arise from a contention that it is entitled to the funds if the statute of limitations can be asserted against the depositor. This raises a very interesting question.

In the case of Commonwealth v. The Dollar Savings Bank, 19 Dauph. 230, 235, under the Act of April 17, 1872, P. L. 62, which provides for the taking over by the Commonwealth of unclaimed deposits in savings banks, much in the same way as the Act of 1937 does as to deposits generally, Judge Kunkel said:

"Both provisions, the one which takes away from the depositor his right of action against the savings bank and the other, which declares the receipt of the State Treasurer a complete discharge from liability, were intended to protect the savings bank. So even if the first provision for its protection be avoided by the section of the Constitution referred to, it still has full protection in the effect which the statute directs shall be given to the receipt of the State Treasurer."

And the Supreme Court in this case, 259 Pa. 138, held: "Every sovereign state has jurisdiction to take charge of apparently abandoned or unclaimed property." The act

was sustained against the same constitutional attacks that are made in the instant case.

In the case of Germantown Trust Co. v. Powell, 265 Pa. 71, the provisions of the General Escheat Act of 1915, with respect to paying into the State Treasury for safekeeping property unclaimed for the period mentioned in the act, were attacked. We think the decision in that case is largely conclusive of this controversy. It was there said (p. 77) :

"There seems to be no room for doubt that the Commonwealth, by virtue of its sovereign power, may take charge of property abandoned or unclaimed for a period of time, or which has no known owner: Com. v. Dollar Savings Bank, 259 Pa. 138, 145, and cases cited. . . . A statute of escheat, in effect, simply provides for a termination of the contract of deposit, at the instance of the Commonwealth and by virtue of its sovereign power, where there are no heirs to claim the property, after the death of the owner, or after expiration of such reasonable time as may be fixed by law to raise a presumption of death."

After referring to the statutory regulation in Pennsylvania, the opinion continues (p. 78) :

". . . the validity of these acts has been sustained without suggestion that their enforcement violates any contract between the owner of the property and the person or institution in whose hands the property was deposited or placed for keeping." And continuing on page 83 :

"Under section 15 the bar of the statute of limitation and presumptions of payment will not affect the duty to make report and liability to escheat according to the provisions of the act. The legislature has power, if deemed necessary, to establish a new period of limitation, or change an existing one without violating any constitutional prohibition, providing, of course, notice of such provision is contained in the title of the statute."

We understand the same claim to be made in this case as was made in the bridge company case, where the brief states it as follows:

"After the appropriate statute of limitations has run, the person who would have been entitled to recover the moneys if suit be brought in the time provided by the statute, has lost his property therein and it thereafter ceases to be his property, and therefore there is nothing remaining which can be the subject of escheat to the Commonwealth of Pennsylvania."

For this proposition the cases of Kenyon v. Stewart, 44 Pa. 179, 191, and Lewis v. Pennsylvania R. R. Co., 220 Pa. 317, are cited. Defendant can take little comfort out of these cases. In the Kenyon case there is a general discussion as to the function of statutes of limitation, but the decision there was "The power of the legislature to modify legal remedies is the same whether applied to past or future cases, but it is to be exercised with a sound discretion, and a due regard to the rights of private property." The Lewis case involved the repeal of a statute of limitations after rights had been fixed under it. It was simply decided that where a right of action was barred prior to the passage of an act, that act could not take away the legal rights which had been there settled by removing the bar to the action.

Defendant relies upon the case of Illinois Bell Tel. Co. v. Slattery et al., 102 F. (2d) 58. In that case there was a bill in equity to restrain a proceeding in escheat, the object of which was to take unclaimed excessive charges which should have been refunded, and it was there held that "unclaimed refunds did not pass to the state after expiration of period fixed by decree for filing claims, since mere debtor-creditor relation existed and debt ceased after expiration of such period, as against contention that doctrine of 'bona vacantia' was applicable." That decision was based upon the proposition that there was no applicable statutory provision in the State of

Illinois, and that the determination of the question must not rest upon the common-law doctrine of bona vacantia. The court said, with reference to the argument that bona vacantia was never recognized as to debts (p. 68) :

"To our minds, this argument is beside the point, for the reason that when the state made claim, there was no longer a debt in existence. Therefore, there was nothing for the state to take."

As against the Slattery case, there is the case of Brooklyn Borough Gas Co. v. Bennett, etc., et al., 154 Misc. 106, 277 N. Y. Supp. 203, which is very much in point. There the question arose on the application of a statute, quite similar to our Act of 1937, to secure the payment into the State Treasury of consumers' deposits required by the gas company which had been unclaimed for 15 years. In a very extensive opinion considering the same constitutional attacks that are made in the instant case, the proceeding was upheld. It was there said, at page 117, quoting from the case of Attorney General v. Provident Institution for Savings, etc., 201 Mass. 23, 26, 86 N. E. 912:

" 'The contract between the corporation and each depositor, by an implied condition, was to be subject to termination by the Commonwealth whenever conditions should arise that would justify the State in exercising this power to take the property into its care for the benefit of the persons entitled to it, and when the Commonwealth, in view of these conditions, should assert this power. There is nothing in the respondent's charter that limits the right of the Commonwealth in these particulars. By the act of the Legislature the corporation was authorized to receive deposits of money, and to use and improve them to the best advantage for the persons making the deposits. . . . The ownership of property by the depositors, and the right of the Commonwealth to deal with property within its jurisdiction, are not affected by the statute.' "

We think this case is very persuasive and we follow its reasoning.

5. Does the act violate sections 1, 9, 10, or 11 of article I of the Constitution of Pennsylvania, or the Fourteenth Amendment to the Constitution of the United States?

This involves the question as to whether there is due process of law. The act provides for the alternative procedure of paying money into the State Treasury without escheat and provides for refunds upon application made to the Board of Finance and Revenue. It further provides in section 10 (c) :

"Any claimant for any such refund of money or for the return of property may appeal by petition to the court of common pleas of Dauphin County from an adverse decision of the Board of Finance and Revenue, which court shall thereupon hear such testimony as may be offered in support of the claim and determine whether or not the claimant is entitled to any refund of money or return of property, and if so, the amount thereof or the nature or character thereof."

We are of opinion that, notwithstanding the case of Commonwealth ex rel. v. Cunningham et al., 337 Pa. 289, the gas company is in no position to raise this constitutional question. In that case Mr. Justice Barnes, writing a dissenting opinion and quoting the applicable authorities, argued that the sheriff was not in a position to raise the question, but the Supreme Court, in the majority opinion, held that if the act under review in that case were invalid, the sheriff would not be released but would be liable to pay the depositor, and it would be no answer that the sheriff had paid the depositor's money to one not legally entitled to receive it. He therefore might be required to pay twice. No such situation can arise here because the payment to the Commonwealth abundantly protects the customer, who is afforded an adequate remedy.

In the case of Commonwealth ex rel. v. Cunningham et al., supra, there was a bill in equity for an accounting under the Act of April 8, 1937, P. L. 284, by the Attorney General against the executors of the estate of Thomas

W. Cunningham, a former sheriff of Philadelphia County, to require the payment of all moneys advanced and deposited with Mr. Cunningham, as sheriff, for his charges and which were not earned or expended and not thereafter subsequently claimed by the depositors. That act, in section 1, required that, as to all moneys paid to any county officer in any county of the first class which do not belong to such officer, where no claim for payment is made within a period of one year, it shall be the duty of such officer to pay said moneys "over to the county treasurer for safekeeping, and to furnish to the county treasurer a statement of the source from which such moneys were derived, and the name of the person or persons, if known, who are legally entitled to such moneys." A copy of such statement is required to be filed with the controller, and all persons legally entitled thereto, if known, are required to be notified.

Section 2 provides that if the person or persons legally entitled thereto claim the same "the moneys shall be repaid from the county treasury on warrant of the county controller after proof of claim to the satisfaction of the county controller."

Section 4 of the act provides in part:

"All moneys paid into the county treasury, in accordance with the provisions of this act and held for the benefit of any claimant or claimants, shall, if no claim therefor is made within seven years from the time the same was paid into the county treasury, be escheated to the Commonwealth for the use of the county . . .".

The statute involved in the Cunningham case is altogether different from the statute in the instant case, and it was declared unconstitutional upon the very apparent proposition that no remedy, except a claim made to the controller, was afforded; whereas in the instant case the statute specifically provides for an appeal to this court. A quotation from the opinion of the court in the Cunningham case is sufficient to draw the distinction. It is said (p. 299) :

"No right of appeal is granted . . . Does that provision of the Act of 1937 furnish an adequate substitute for the right of action theretofore existing? The substitute provided deprives a claimant of a judicial trial, and, instead, requires him to satisfy the controller. By what rules shall the controller be satisfied? Suppose he denies a claim and says that he is not satisfied with the proof, what then? Or, if in allowing prior claims, the controller has been mistaken and has exhausted the deposited funds, leaving nothing to pay a valid claim; from what shall the refund be made, the county not being required to supply money for that purpose? The right of the depositor to sue for the refund in some form of action is a property right. . . . That right is taken away by the Act. While due process would be satisfied if an adequate substitute for the destroyed right were provided, the Act provides none. It contains no provision for appeal to a court from the controller's denial of the claim. . . . To sustain the Act in this respect, appellee relies on Com. v. Dollar Savings Bank, 259 Pa. 138, 102 A. 569, but the statute considered in that case gave a new right of action against the state to recover the deposits turned over by the bank; the depositor's claim was not, as here, restricted to the adjudication of a non-judicial forum; his right of action against the bank was taken away, but, for it, the law substituted the right to sue the state. Due process was satisfied by the substitution of a right of action against the state for the withdrawn right to sue the bank. As the Act of 1937 takes away the payer's right to sue the sheriff and substitutes only a demand on the controller, without judicial review, the statute denies to the depositor the due process guaranteed by the constitution; the Act is therefore not available against appellants because payment by them to the county controller would not be a good payment."

We think this quotation abundantly justifies the conclusion that due process is preserved by the act under consideration in the instant case.

It is contended that no jury trial is afforded. Due process does not require a jury trial in all classes of actions. The constitutional provision that "trial by jury shall be as heretofore, and the right thereof remain inviolate," means that in all proceedings where a jury trial was demandable at the time of the adoption of the Constitution it could not be taken away by statute, but where new proceedings are established by law the remedy afforded need not necessarily be a jury trial if there is a proper right of review before a regularly constituted judicial tribunal. It is not necessary to cite any authority for this proposition.

It is further suggested that the act may be unconstitutional because it limits the evidence which the court may receive to that which was presented before the Board of Finance and Revenue. Paragraph (c) of section 10 provides in part:

"No such appeal shall be entertained, however, unless the claimant shall file with his petition an affidavit that all proof, which he proposes to offer in support of the claim, has been presented to the Board of Finance and Revenue before that board acted adversely upon his claim."

It is not necessary to discuss the constitutionality of this restriction. It is sufficient to say that there are two good reasons why it cannot affect the decision in the present case.

First: It has no application until after there is a payment into the State Treasury and a subsequent claim for a refund. The gas company, in the instant case, is not within the class which can make a claim for a refund. In addition to what is said by Justice Barnes in his opinion in Commonwealth ex rel. v. Cunningham et al., supra, it is only necessary to quote from the late case of Turco Paint & Varnish Co. v. Kalodner et al., 320 Pa. 421, 436:

"For it is a well-recognized rule that a court will never heed objections to the constitutionality of an act of assembly unless the complainant is affected by the particu-

lar feature alleged to be in conflict with the Constitution: Mesta Machine Co. v. Dunbar F. Co., 250 Pa. 472; Plymouth Coal Co. v. Com. of Pa., 232 U. S. 531; Smith v. McCarthy, 56 Pa. 359, 362."

Secondly: The Act of 1937 contains a severability clause which indicates the intention of the legislature that, if any portion of it is unconstitutional, the rest of it remains. That principle of constitutional construction would be invoked without the legislative declaration, but including it in the statute creates a stronger "presumption that the legislature would have passed the act notwithstanding its unconstitutional parts": N. R. Bagley Co., Inc., v. Cameron, 282 Pa. 84, 89, and cases cited.

In Rutenberg et al. v. Philadelphia et al., 329 Pa. 26, 39, the rule is stated as follows:

"The test of severability may be stated in simple terms as follows: after the invalid portion of the act has been stricken out, whether that which remains is self-sustaining and is capable of separate enforcement without regard to that portion of the statute which has been cast aside. If this be true the statute should be sustained to the extent of that which remains."

There can be no difficulty in sustaining the statute with this provision of section 10 eliminated were it necessary to conclude that it is unconstitutional.

6. Does the statute violate article III, sec. 7, of the Constitution, which provides that the General Assembly shall not pass any local or special law providing or changing methods for the collection of debts?

Here again the opinion of the Supreme Court, in the case of Commonwealth ex rel. v. Cunningham et al., supra, demonstrates the difference between the act under review in that case and the act before us. That act refers only to county officers in counties of the first class. The Act of 1937, involved in the instant case, refers to everybody and every corporation anywhere which has money or property unclaimed for six or seven years, as the case may be. The court said (p. 302):

"The Act of 1937 takes away all remedies theretofore applicable to the enforcement of the obligation whether of fiduciary character or in the debtor-creditor relation and substituted a limited trial before the controller without judicial review. We can find no possible ground to support such a classification . . .".

And the court further referred to the fact that money was required to be paid into the county treasury when unclaimed for a year, and it might be thus paid within the last month of the sheriff's term, and the right of the depositor to reclaim it be taken away. The court then said (page 303) :

"We cannot agree that indemnity so recently deposited can be regarded as 'apparently abandoned', with the result that the owner must satisfy the county controller of the validity of his claim."

Here again the court pointed out the distinction in the case of Commonwealth v. Dollar Savings Bank, supra, which distinction, we think, is applicable in the instant case.

7. It is contended that this statute also violates article 1, sec. 17, of the Constitution of Pennsylvania in that it impairs the obligation of contracts.

The only obligation of the contract which might be impaired would be to take away the right of the gas company to assert the statute of limitations against the customer. The decided interest of the gas company is to assert that the law of limitations as to simple contracts is not impaired, and its claim frankly is that because it was not impaired it is entitled to the money, and, there being no valid owner to it, the State could not escheat it. How it is possible to assert that the gas company is within the class of persons whose constitutional right is violated in this respect is difficult to see. And, therefore, we think there is no impairment of the obligation of the contract, because the State has the right to fix the time when property is escheatable, and if there were such a situation in

the instant case, the gas company would be benefited and not harmed.

8. The only other constitutional question suggested is that the act violates section 21 of article III of the Constitution of Pennsylvania, in that it changes the limitations of time within which suits may be brought against corporations different from those fixed by general laws regulating actions against natural persons. We think that section of the Constitution has no application. This is a general law. In any event, this suggestion is sufficiently answered by the case of Germantown Trust Co. v. Powell, 265 Pa. 71, 83, in which it is held, dealing with the General Escheat Act of 1915:

"The legislature has power, if deemed necessary, to establish a new period of limitation, or change an existing one without violating any constitutional prohibition . . .".

Furthermore, since the Act of 1937 operates only upon moneys and property subject to escheat under existing law, there is no change in any statute of limitations with reference to the bringing of suits.

In In re Pennsylvania Indemnity Corp., 37 D. & C. 208, Judge Kun held that this same statute did not violate the due process clause of either the State or Federal Constitution.

As in the bridge company case, in which the opinion is this day filed, so in the instant case we think the petition is amendable. The subject matter of the controversy is the escheatability of the customers' deposits made over a course of years, and the evidence shows that some of them are as far back as 1890. A fair inference would be that at least some of the owners of these funds died intestate and have now no known heirs or kindred. The Act of 1787, to which we have referred, makes escheatable, in our judgment, these funds where the party to whom they were due shall "die intestate without heirs or any known kindred." The same language is repeated in the Act of 1889. Therefore, we think that, instead of dismissing the petition, the Attorney General should be

allowed to amend it so as to determine what are escheatable under these statutes.

And now, March 11, 1940, the questions of law raised by the answers of The Harrisburg Gas Company are hereby overruled, and the Attorney General is permitted to amend his petition within 15 days from this date.