## In re Harrisburg Bridge Company

*George W. Keitel,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for petitioner.

*Alton W. Lick,* of *Hause, Evans, Storey & Lick,* for respondent.

Hargest, P. J., March 11, 1940.—This case involves the construction of the Act of June 25, 1937, P. L. 2063, 27 PS §434 et seq.

The Attorney General presented his petition January 16, 1939, "to procure the payment into the State Treasury to the credit of the Commonwealth, without escheat, of certain moneys held and possessed by the said Harrisburg Bridge Company," averring that the moneys are escheatable under the provisions of this act, consisting of dividends "which have remained unpaid and unclaimed for six or more successive years," according to the list annexed to and made part of the petition, and which were reported to the Department of Revenue.

An answer was filed raising questions of law.

Necessarily, the first question to be considered is the scope of this act. The part of the title which is pertinent is:

"An act providing for the payment into the State Treasury, without escheat, of certain moneys and property subject to escheat under existing law, namely unclaimed dividends and profits. . . ."

There is no difficulty about this title. It clearly limits the operation of the act to "certain moneys and property subject to escheat under existing law," and if there is an attempt to extend the act beyond the clear expression of the subject matter as contained in the title, then, of course, under the settled law, such extended use of the act would be unconstitutional. We must read the title as the clear language of it requires, and not extend the act beyond the scope of that clearly-expressed subject: Ferguson's Estate, 325 Pa. 34; McGarrity, Admr., v. Commonwealth, 311 Pa. 436; Guppy v. Moltrup, 281 Pa. 343; Spangler's Estate, 281 Pa. 118; Provident Life & Trust Co., v. Hammond, 230 Pa. 407; Reeves et al. v. Philadelphia Suburban Water Co., 287 Pa. 376, 388.

The first section of the act provides:

"Legislative Determination and Declaration of Policy. —It is hereby declared, as a matter of legislative deter-

mination, that the moneys and property, hereinafter enumerated in this act, are now and have heretofore been subject to escheat both under the common law and under the provisions and requirements of existing acts of Assembly. . . .

"Therefore, it is hereby declared to be the policy of the Legislature to provide, and it is the purpose and intent of this act so to provide, for the payment of such moneys and property, hereinafter described, into the State Treasury without escheat . . .".

This is a legislative curiosity fortunately most unusual. There can be no doubt that it is proper for the legislature, in passing an act of assembly, to make clear what its intentions are by the passage of such act, but this is a flagrant attempt to usurp the judicial function and declare, not only what the statutory law, but also what the common law, is with reference to escheat. As might well be expected, the legislative fiat as to the law of escheat is not correct. And, having attempted to declare the law to suit its purposes, the act says that all the "moneys and property, hereinafter enumerated in this act, are now and have heretofore been subject to escheat."

The mere ipse dixit of the legislature as to what the prior law, either statutory or common law, was, cannot affect that prior law. The legislature cannot either add to it or detract from it by any such declaration. It is hardly necessary to cite authorities upon this proposition.

In reference to this very provision, however, the Supreme Court, in Edelman v. Boardman, etc., 332 Pa. 85, 95, said:

"But plaintiff can scarcely contend that the question whether such property was escheatable before the Act of June 25, 1937, P. L. 2063, expressly made it so is not involved in reasonable, or even serious, doubt, notwithstanding the legislative declaration in that act that such property was theretofore escheatable 'both under the common law and under the provisions and requirements of existing acts of Assembly.' "

In Tyson & Brother, etc., v. Banton, etc., et al., 273 U. S. 418, 431, the Supreme Court, citing Wolff Packing Co. v. Court of Industrial Relations, etc., 262 U. S. 522, 536, said:

"And, finally, the mere declaration by the legislature that a particular kind of property or business is affected with a public interest is not conclusive upon the question of the validity of the regulation. The matter is one which is always open to judicial inquiry."

In Pa. R. R. Co. v. Driscoll et al., 330 Pa. 97, 105, it is held that there can be no "legislative absolutism" as to what steps are necessary to secure safety and that the legislative declaration as to such matter is not final and conclusive, but is subject to judicial review.

Therefore, the attempt by the legislature to declare that the moneys and property concerning which the Act of 1937 deals are subject to escheat is useless verbiage, and this act must be limited, as it is in its title, to moneys and property which were actually, under existing law, theretofore either judicially or statutorily declared to be the subject matter of escheat.

The Commonwealth contends that the unclaimed dividends in the hands of the bridge company were escheatable prior to the passage of the act. That brings us to an examination of the status of the law as to escheat at the time of its passage. In 21 C. J. 848, §1, it is said:

"Under the feudal system escheat was strictly an incident of tenure and imported an extension of tenure. In this country escheat in the feudal sense existed in a few of the early colonies, but has not prevailed since the revolution, and is now very generally regulated by statute."

In this Commonwealth it is altogether regulated by statute, as said by Chief Justice Gibson in In re Desilver's Estate, 5 Rawle 111, 112:

"It is true that our property is allodial, and that escheats with us, take effect, not upon principles of tenure, but by force of our statutes to avoid the uncertainty and

confusion, inseparable from the recognition of a title founded in priority of occupancy".

In Wallace v. Harmstad, 44 Pa. 492, 501, it is said:

"Escheat, which was one of the incidents of feudal tenures, is sometimes mentioned as marking the feudal origin of our titles, and the allegiance which we owe to the state is also often spoken of as fealty. Escheat, with us, depends on positive statute, which makes the state the heir of property on defect of known kindred of the decedent. Nothing about it but the name is feudal".

In Commonwealth v. Naile, 88 Pa. 429, 433, the court said, with reference to a failure of heirs:

" 'The Commonwealth in such case may well be considered *ultima haeres*, and as succeeding to all the rights and all the remedies of the heirs or next of kin in ordinary cases.' "

In Cunnius v. Reading School Dist., 206 Pa. 469, 475, the court said:

"But there must be a limit beyond which the state is not bound to have its laws set at defiance by the whim of an individual, and property kept in abeyance as to its ownership."

As held in Germantown Trust Co. v. Powell, 265 Pa. 71:

"The Commonwealth by virtue of its sovereign power, may take charge of property abandoned or unclaimed for a period of time."

See also Commonwealth v. Dollar Savings Bank, 259 Pa. 138.

This question is also discussed in an opinion filed this day in the case of In re The Harrisburg Gas Company, 38 D. & C. 611 (hereafter called the gas company case).

It, therefore, follows that the Commonwealth may lawfully declare when property shall be regarded as escheatable to the Commonwealth, because the owner has abandoned it or is unknown or has died, leaving no one to inherit it. The power of the State in this respect is inherent in sovereignty and arises out of the doctrine of bona vacantia. It rests upon the principle that when property

has ceased to have an owner it should be held for the benefit of the community: Columbia National Bank et al. v. Powell, etc., 66 Pitts. 689.

It now becomes necessary to determine what kinds of property under our statutes were escheatable when the Act of 1937 was passed. We have reviewed the pertinent statutes in the opinion filed this day in the gas company case. For the purposes of this case it is only necessary to determine whether the dividends by the Harrisburg Bridge Company were escheatable.

The first statute upon the subject of escheats was the Act of September 29, 1787, 2 Sm. L. 425, which, as declared in Commonwealth v. Naile, 88 Pa. 429, 435, "remains effective and unimpaired, except as it has been modified by later legislation." That act declares in the preamble:

". . . no regular course of proceeding hath been heretofore provided . . . bringing into the public treasury, the value of the real and personal property of such persons, who, being possessed thereof within the same, die intestate, and without any known kindred, whereby the commonwealth is prevented of her rights," etc.

Section 2 of the act provides for the escheat as follows:

". . . if any person, who, at the time of his or her death, was seized or possessed of any real or personal estate within this commonwealth, die intestate, without heirs or any known kindred, such estate shall escheat to the commonwealth".

The serious question is whether the words "real or personal estate" cover a chose in action or a claim, and we would be impelled to decide that they did not if it were not for section 8, which provides:

"That if any person, at the time of the death of any intestate as aforesaid, shall be indebted to such intestate . . . the same shall be recovered to the use of the Commonwealth".

The procedure therefor is also set out.

And the legislature of 1823 passed a supplement to the Act of 1787, being the Act of March 19, 1823, P. L. 99, by which it declared that the jury of inquest "shall be competent to decide whether an escheat has occurred of any goods, chattels, effects, claims, or demands".

Then followed the Act of May 2, 1889, P. L. 66, sec. 1, which is a general act upon the subject, and provides that if any person dies intestate, seized of real or personal property "without heirs or known kindred . . . such estate of whatsoever kind the same may be, whether legal or equitable," shall escheat to the Commonwealth.

It is, therefore, apparent that claims and demands were escheatable under the Acts of 1787, 1823, and 1889.

It is contended that these dividends are not escheatable because the bridge company is not incorporated to receive deposits of money or property. The three acts, to which we have referred, do not limit the escheatable property to that held by that class of corporations. Another series of statutes refers to them, which we have discussed in the gas company case.

It is now incumbent upon us to determine whether there was a trust relation created by the declaration of these dividends or whether there was only a debtor and creditor relation between the bridge company and its stockholders. If there be only a debtor and creditor relation, other serious questions arise which we have discussed in the gas company case.

When property is held in the nature of a dry trust without known owners, the Commonwealth may, by statute, after a reasonable time, declare it to be escheatable: West v. Pennsylvania Co., etc., 64 Pa. 195; Commonwealth v. Naile, supra; Linton's Estate, 198 Pa. 438.

Does such a trust arise where there are unclaimed dividends? We are of opinion that it does. In Dock v. Schlichter Jute Cordage Co., 167 Pa. 370, 378, the report of the master, which was approved by the Supreme Court, contained this language:

" 'There are cases readily imaginable where, after a declaration of a dividend, a shareholder would acquire a vested right within the meaning of the plaintiff's contention, as for example those in which with respect to the shareholder, the company has made an express appropriation of so much of its earnings or so many of its shares, and thus separated them from the general property of the company in such manner that they may be said to be clothed with a trust obligation'."

In Homan et al., etc., v. First National Bank, 316 Pa. 23, 26, it is said:

"The rule applicable to the deposit of a fund for the purpose of paying a dividend is different from that covering a fund deposited to meet coupons, and would seem to be, according to decisions in jurisdictions in which the question has arisen, that where money is deposited by a corporation in a bank for the purpose of paying a dividend, the money so deposited is impressed with a trust in favor of the stockholders and cannot subsequently be withdrawn" (citing many cases).

We are of opinion that the same trust relation exists after a dividend is declared payable to stockholders and the company has set aside, out of its own general funds, money sufficient to pay such dividends, even though it may not be earmarked, or has separately deposited such money.

Vosburgh's Estate, 279 Pa. 329, sustains this proposition. It is therein said (p. 332):

"A trust is a relation between two persons, by virtue of which one of them as trustee holds property for the benefit of the other. The term 'trust' is a very broad and comprehensive one. Every deposit is a trust, except possibly general bank deposits; every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied as well as when not so applied . . . And where a trustee has mingled trust funds with his own, and afterward takes sums from the com-

mon mass for his own use, it will be presumed, so long as the mass is as large as the original trust funds, that the sum so taken was his own and not the trust funds.''

In LeRoy v. Globe Ins. Co. et al., 2 Edw. Ch. (N. Y.) 657, cited with approval both in Dock v. Schlichter Jute Cordage Co., supra, and Homan et al., etc., v. First National Bank, supra, the court said (p. 672):

''It makes no difference, in my judgment, that the money was not told out and specifically set apart in the bank to meet these checks [for payment of declared dividends] or that a separate fund was not created for the purpose or that the money intended to meet them still formed a part of the general mass standing to the credit of the company on the books of the bank: for this court can, nevertheless, lay hold of the mass and separate so much as may be necessary to accomplish what was intended. . . .''

See also 11 Fletcher Cyclopedia Corporations 786, §5322.

Moreover, in Pennsylvania a corporation cannot declare dividends until they are earned and there are available funds out of the net profits to pay them: Levin et al. v. Pittsburgh United Corp. et al., 330 Pa. 457, 470; Given's Estate, 323 Pa. 456.

We are not unmindful that in Given's Estate, supra, Chief Justice Kephart in writing the opinion, page 460, as to the declaration of dividends, said:

''By such declaration the relation of debtor and creditor is created between the corporation and the holder of the shares of stock.''

We think this was dictum. It was not necessary to the decision of that case. The same thing may be said of the case of Harr, etc., v. Bankers Securities Corp., 129 Pa. Superior Ct. 547. Such a statement certainly is not consistent with the declaration in Homan et al., etc., v. First National Bank, supra, that the ''money [dividends] so deposited is impressed with a trust in favor of the stock-

holders", nor with the declaration in Dock v. Schlichter Jute Cordage Co., supra, unless a very narrow distinction is drawn that a trust relation is created only when a separate fund is established, but where, notwithstanding the declaration of dividends, the corporation keeps the money applicable for the payment therefor in its own general funds, it is the relation of debtor and creditor. Such a conclusion would put the rights of the shareholders wholly in the control of the corporation to determine whether it should create the relation of debtor and creditor or a trust relation between it and its stockholders, and, in our opinion, would lead to useless confusion as to the legal rights of shareholders and those who succeed to their rights in dividends. The statement of Chief Justice Kephart also is in the teeth of the quotation above from LeRoy v. Globe Ins. Co. et al., supra, which has been cited with approval in Homan et al., etc., v. First National Bank, supra, and in Dock v. Schlichter Jute Cordage Co., supra.

However, the bridge company is impaled on either horn of the dilemma. If trust funds, they may be escheatable under the Acts of April 17, 1869, P. L. 71, May 2, 1889, P. L. 66, and May 11, 1911, P. L. 281, hereinafter referred to. If as "debts or demands," they may be escheatable under the Acts of 1787, 1823, and 1889, as we hold in the gas company case.

We, therefore, conclude that, as to the owners of these dividends, the Harrisburg Bridge Company was a trustee and required, under section 3 of the Act of 1937, to make report "of all dividends or profits declared by it to any stockholder or member and unclaimed for six or more successive years next preceding the first day of said month".

However, the further question arises as to what trust funds are escheatable under the statutes of Pennsylvania. The very recent case of Rosenfeld's Appeal, 337 Pa. 183, decided by the Supreme Court of Pennsylvania January 2, 1940, requires careful consideration. In that case Max-

well S. Rosenfeld was appointed escheator by the Secretary of Revenue to secure unclaimed moneys in the hands of the former sheriff, Robert E. Lamberton, as escheatable to the Commonwealth. He presented his petition which was dismissed and, upon appeal, the dismissal affirmed. The Supreme Court said (p. 185):

"The escheator's contention that the funds in the hands of the sheriff are subject to escheat is based upon the provisions of several statutes. The statutes are: The Act of April 17, 1869, P. L. 71, Sec. 2, (providing for the escheat of property in the hands of a trustee where the cestuis que trust are unknown for a period of seven years); the Act of April 17, 1869, P. L. 71, Sec. 3, 27 PS Sec. 332, (providing for the escheat of funds in the hands of a trustee, bailee or other depositary without rightful owner); the Act of May 2, 1889, P. L. 66, Sec. 3, as amended by the Act of May 11, 1911, P. L. 281, Sec. 1, 27 PS Sec. 333, (providing for the escheat of property in the hands of a trustee without a lawful owner); and the Act of May 2, 1889, P. L. 66, Sec. 2, 27 PS Sec. 334, (providing for the escheat of funds in the custody of a court where the rightful owner has been unknown for a period of seven years).

"Passing the question whether the relation of former Sheriff Lamberton to the persons who deposited the funds with him is such as to bring the situation here presented within the terms of these acts, it is clear that they have no application. Each and every one of them refer to property the rightful owners of which are unknown. The petition in the instant case alleges merely that the funds were unclaimed for seven years. There is no allegation in the petition that the owners of the funds are unknown. In fact the implication is otherwise."

In the instant case, the Commonwealth relies upon section 3 of the Act of April 17, 1869, P. L. 71, 27 PS §332, and section 2 of the same act, as supplied by section 3 of the Act of May 2, 1889, P. L. 66, 27 PS §333. There are

two of the acts above referred to in which the Supreme Court has definitely said that, in order to bring the case within those statutes, there must be an allegation that the owners of the funds are unknown. The case just referred to dealt with procedure and not with the substantive law as to whether a claim or demand or a trust fund, where the owner was unknown for the statutory period, was subject to escheat. We are of opinion that trust funds were escheatable under proper proceedings under the laws existing at the time of the passage of the Act of 1937 and, therefore, within the reach of proper proceedings under that act. However, the petition in the instant case contains no allegation that the owners of the funds are unknown. It avers that the moneys are escheatable because "they consist of dividends . . . which have remained unpaid and unclaimed six or more successive years." That allegation is not sufficient.

Other questions of law raised in this case are discussed in the opinion this day filed in the gas company case.

In Rosenfeld's Appeal, supra, the petition was dismissed, but the question of amendment does not seem to have been raised. The subject matter of this case is the escheatability of the unclaimed dividends. In the conclusion to which we have come, and in the language of the quotation from the opinion of the Supreme Court above, the dividends are escheatable if the funds are without a rightful owner or the owner is unknown, or the owner has been unknown for a period of seven years or more. That such a state of facts exists is apparent, for the petition itself shows that some of these dividends have been unclaimed for a period of over 100 years. Under the circumstances we think that the Attorney General's petition is amendable and should not be summarily dismissed.

And now, March 11, 1940, the questions of law raised by the Harrisburg Bridge Company are hereby overruled, and the Attorney General is given 15 days within which to present an amended petition.